Virginia Dawn WHITE, Individually and As Next Friend of Carol McLaughlin, A Minor, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

No. 4:94CV280.

United States District Court, E.D. Texas, Sherman Division.

Dec. 11, 1995.

Larry Cain and Shain Chapman, Law Office of Larry Cain, Sherman, TX, for plaintiff.

Cary L. McDougal and Steven Roberts, Cooper & Aldous, P.C., Sherman, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

PAUL N. BROWN, District Judge.

This is a suit by an alleged common-law wife, both individually and on behalf of her daughter, against her automobile insurer seeking to collect under the uninsured/underinsured motorist provision of her policy for the death of her alleged common-law husband. The insurer has filed two motions for partial summary judgment.

### INTRODUCTION

Plaintiff, Virginia Dawn White, ("White") was the alleged common-law wife of James Darrell McLaughlin ("McLaughlin"). White alleges that she and McLaughlin were common-law married sometime during 1986 or 1987. White and McLaughlin separated in 1989 and with the exception of one week during 1989, ceased cohabitation at that time. During White and McLaughlin's relationship, they had a daughter, Carol McLaughlin, on whose behalf White also brings this suit [1].

---

1. The Court notes there is a possible lack of standing of Carol McLaughlin. However, the Court is of the opinion that the motions before the Court may be decided without implicating any standing issues and chooses to reserve a decision on Carol McLaughlin's standing until a later date.

In April 1993, White purchased an automobile insurance policy from Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). Part C of the policy provides insurance coverage for damages received by a covered person because of an uninsured or underinsured motorist. Specifically, Part C provides that "[State Farm] will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident." The policy defines a "covered person" as including the insured, the insured's family members, and any person occupying the insured's covered automobile. The policy also defines "family member" to include any person who is both a resident of the insured's household and is related to the insured by blood, marriage or adoption. A spouse who is not a resident of the insured's household "during a period of separation in contemplation of divorce" is also covered as a "family member."

On November 3, 1993, McLaughlin was killed in a drunk driving accident while riding as a passenger in a car driven by Russell Horner. It is undisputed that at the time of the accident McLaughlin was not residing with White. At the time of the accident, Horner either had inadequate or nonexistent insurance. Thereafter, White made a claim for McLaughlin's death under the uninsured/underinsured motorist provision of the State Farm policy. State Farm denied White's claim on April 11, 1994, on the basis that McLaughlin was not a resident of White's household and was not in an auto owned by White.

White filed suit in state court in Grayson County, Texas on October 13, 1994. State Farm removed the action to this Court on November 11, 1994. State Farm has now filed a motion for partial summary judgment on plaintiffs' contractual claims and a motion for partial summary judgment on plaintiffs' extracontractual claims.

### SUMMARY JUDGMENT STANDARD

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The trial court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981) (citations omitted). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden, however, does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325–27, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment will be appropriate. *Celotex,* 477 U.S. at 321–25, 106 S.Ct. at 2552–53. Even if the nonmovant brings forth evidence in support of its allegations, summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).

### STATE FARM'S SUMMARY JUDGMENT MOTION ON BREACH OF CONTRACT CLAIMS

State Farm based its denial of coverage on the position that McLaughlin was not a "covered person" under the terms of White's policy. White contends McLaughlin was her common-law husband and was covered under the terms of the policy, despite not being a resident of her household. In its first motion

for partial summary judgment, State Farm argues that: (1) White and McLaughlin were not married at the time of McLaughlin's death; (2) White's claim of common-law marriage is barred by the statute of limitations for proving informal marriages under Tex. Fam.Code § 1.91(b) (Vernon 1993); and (3) White's claim is barred by quasi estoppel. The Court is of the opinion that fact issues exist as to State Farm's first and third arguments. Moreover, the Court finds that section 1.91(b) violates the Equal Protection clause of the United States Constitution, and is therefore inapplicable to White.

### A. *Existence of a Common–Law Marriage*

■ Texas has long recognized that persons who desire to live as husband and wife need not necessarily formalize their desires by engaging in a ceremonial wedding. *See, e.g., Grigsby v. Reib*, 105 Tex. 597, 153 S.W. 1124 (1913). Section 1.91(a)(2) of the Texas Family Code is the codification of the common law's requirements for an informal or "common-law" marriage. In order to prove a common-law marriage in Texas, a party must satisfy three elements: (1) that the couple agreed to be married; (2) after their agreement, the couple lived together in Texas as husband and wife; and (3) the couple represented to others that they were married. Tex.Fam.Code § 1.91(a)(2). The existence of a common-law marriage is a question of fact, with the burden of proof being on the party seeking to establish the marriage. *Weaver v. State*, 855 S.W.2d 116 (Tex.App.—Houston [14th Dist.] 1993, no pet.).

■ State Farm argues that White has not shown that a marriage relationship existed between she and McLaughlin under "any method recognized by the laws of the State of Texas." State Farm further contends that even if a common-law marriage existed between White and McLaughlin, that it terminated at least three years prior to the accident in November 1993. White responds by

showing that the investigation by State Farm either establishes or, at the very least, causes a fact issue to arise regarding her common-law marriage. Moreover, White maintains, and correctly so, that State Farm's argument regarding termination of the alleged common-law marriage is erroneous under Texas law.

■ The Court finds that State Farm has failed to carry its burden regarding the nonexistence of White's common-law marriage. Moreover, contrary to State Farm's position, once a common-law relationship exists, it is treated with the same dignity as a ceremonial marriage and may only terminate by death, divorce, or annulment. *Claveria v. Claveria*, 615 S.W.2d 164, 165, 167 (Tex. 1981). There is no "common-law divorce" in Texas and the mere passage of time and ceasing of cohabitation will not serve to terminate a common-law marriage once it is in existence. *See Id.; Home Indemnity Company v. Edwards*, 488 S.W.2d 561, 563 (Tex. Civ.App.—Ft. Worth 1972, writ ref'd n.r.e.). Accordingly, the Court is of the opinion that fact issues remain as to the existence of a common-law marriage between White and McLaughlin and that State Farm's motion should be denied on this issue.

### B. *Limitations under Tex.Fam.Code § 1.91(b)*

State Farm next argues that even if a common-law marriage existed between White and McLaughlin, White is barred from asserting its existence by the one-year statute of limitations contained in Tex.Fam.Code § 1.91(b)[2]. White contends that she complied with the statute by bringing this action within one year of McLaughlin's death. Alternatively, White maintains that section 1.91(b) violates the Due Process and Equal Protection clauses of the United States and Texas Constitutions, as well as the Open Courts provision of the Texas Constitution.

---

2. The Court is aware that section 1.91(b) of the Texas Family Code has recently been amended. The version under consideration in this case was enacted in 1989. The 1995 amendment deletes the absolute bar contained in the 1989 version. Tex.Fam.Code § 1.91(b) (Vernon Supp.1996). However, because the Legislature specifically provided that the 1995 amendment not be applied retroactively, unless otherwise noted, any reference to section 1.91(b) is a reference to the 1989 version. Tex.Fam.Code § 1.91(b) historical and statutory notes (Vernon Supp.1996) [Act of May 29, 1995, 74th Leg., R.S., ch. 891, § 1, 1995].

## 1. "Proceedings" under section 1.91(b)

 Section 1.91(b) of the Texas Family Code provides as follows:

A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.

In deciding the issue before it, the Court must first determine if the instant proceeding qualifies as a "proceeding in which a marriage is to be proved." From reviewing the case law, it is apparent that Texas' courts do not limit the applicability of section 1.91(b) to only domestic relations cases. Proceedings under section 1.91(b) have run the gamut from probate to criminal cases. *Villages of Greenbriar v. Torres*, 874 S.W.2d 259, 265 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (stating that limitations of section 1.91(b) in probate proceeding is a bar to proof of heirship); *Riley v. State*, 849 S.W.2d 901, 902–03 (Tex.App.—Austin 1993, pet. ref'd) (holding that section 1.91(b) limitation barred the state from proving a previous common-law marriage by the defendant for purposes of invalidating a subsequent marriage and a claim of spousal privilege). Thus, the Court concludes that this case qualifies as a "proceeding" under section 1.91(b).

## 2. Commencing of the Limitations Period

 The Court now focuses on White's argument that she has complied with section 1.91(b) by commencing this suit within a year of McLaughlin's death. White contends that because a common-law marriage may end only by divorce, death, or annulment, that the statute of limitations does not begin to run until one of those events occurs. Texas courts have squarely addressed the issue of when the statute begins to run and have answered the question adverse to White's contention.

White's argument turns on the issue of when the common-law relationship ends. The Court notes that the Legislature chose to craft the statute using the ending of the "relationship" and not the marriage as the beginning of the running of limitations. Tex-as courts have consistently interpreted the ending of the relationship to be the date on which cohabitation ceases. *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 881 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Riley*, 849 S.W.2d at 902. Had White and McLaughlin been cohabitating at the time of his death, then the statute would have run from November 1993. However, the evidence clearly shows, and White has admitted, that they ceased cohabitation during 1989, some four years prior to the filing of this action. Therefore, the Court finds the statute began running in 1989, and this suit was filed after the statute had run.

## 3. Constitutional Challenges

 White maintains that section 1.91(b) violates the Equal Protection and Due Process clauses of the United States and Texas Constitutions and the Open Courts provision of the Texas Constitution. Because the Court is of the opinion that section 1.91(b) is unconstitutional as a violation of the equal protection clause, the Court chooses not to address White's other arguments.

White presents two very distinct classes to the Court: ceremoniously married persons and informally or common-law married persons. White contends section 1.91(b) is unconstitutional because it carves out special treatment for ceremoniously married couples.

 Under Equal Protection analysis of a government's classification, a court must apply differing standards of review depending upon the right or classification involved. If a classification causes a disadvantage to a "suspect class" or threatens a "fundamental right," then the standard of strict scrutiny is applied. *Plyler v. Doe*, 457 U.S. 202, 217, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). If a classification, however, does not involve a suspect class or fundamental right, then the standard of rationality is applied. *Vance v. Bradley*, 440 U.S. 93, 95–97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979).

 White does not argue that 1.91(b) disadvantages a suspect class. Moreover, the Court is unable to find the protection of a marital estate or community property rights

impinges upon a "fundamental right." *See Dannelley v. Almond,* 827 S.W.2d 582, 585 (Tex.App.—Houston [14th Dist.] 1992, no writ). Accordingly, the Court must decide whether the one year prove-up period contained in section 1.91(b) is reasonably related to a legitimate governmental interest.

In 1989, certain members of the Texas Legislature made a significant effort to abolish common-law marriages in Texas. *Russell v. Russell,* 865 S.W.2d 929, 931 (Tex. 1993). The effort failed and section 1.91(b) was the resulting compromise. *Id.* Texas' interest in requiring "timely" proof of informal marriages is to facilitate divorce and probate proceedings by limiting the staleness of evidence presented at those proceedings. *See Dannelley,* 827 S.W.2d at 586. The Court has concluded that the goal of 1.91(b) was to prevent Texas courts from having to rely on stale evidence in proceedings to adjudicate property interests. Section 1.91(b)'s purpose is not solely to have formal proof of informal marriages. The Court finds that a state's efforts at limiting the use of stale evidence in court proceedings is a legitimate governmental interest.

The Court must now determine whether the one-year limitation is rationally related to the accomplishment of the state's interest. In answering this question, the Court chooses to rely on the Supreme Court's decision in *Mills.* In *Mills,* the Court examined the constitutionality of a similar one-year limitation in Texas on proving up the legitimacy of a child. *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982). The Court held that the statute was unconstitutional as a violation of equal protection. *Id.* at 102–03, 102 S.Ct. at 1556. In reaching its decision, the Court found that given the importance of the rights involved and the social, as well as legal, impediments to a legitimacy determination, the one-year time period was too short. *Id.* at 98–03, 102 S.Ct. at 1554–56.

In applying the rationale of *Mills* to White's case, this Court finds that section 1.91(b) is unconstitutional. First, the Court is concerned by the severity of the bar section 1.91(b) presents. By way of example, assume a couple has been common-law married for a lengthy time period and has filed no formal declaration of marriage. During their marriage, the couple has acquired a house, automobiles, investments, financial accounts, and retirement benefits. The couple has also had two children during their period of marriage. Should this couple cease cohabitating and neither file for a divorce or a declaratory judgment seeking to prove the existence of the marriage within one year, under section 1.91(b), all community property rights are extinguished. Moreover, the legitimacy of the children of the marriage is also now placed at issue, because section 1.91(b) puts the couple in a position as if they were never married. *Dannelley,* 827 S.W.2d at 585.

Assuming the same scenario as detailed above for a ceremoniously married couple and the result is the opposite. A formally married couple can separate and cease cohabitating for any number of years, even until death, and Texas law protects the ceremoniously married couple's community property interests, as well as protecting the legitimacy of any children of the marriage. Texas law does this despite the fact that proof of the origin of property and any contributions made by each spouse's separate estate may grow incredibly stale.

Moreover, like the Court in *Mills,* this Court is concerned by the impediments that exist to filing a proceeding under section 1.91(b) in the one-year time period. As discussed above, the statute begins running when cohabitation ceases. If a common-law couple ceases cohabitation, but is attempting to reconcile, the statute may run without there ever being any intent that the marriage cease.

The Court finds that section 1.91(b) is not rationally related to Texas' interest in aiding in the conduct of divorce and probate proceedings. The Court recognizes that the Legislature has the power to limit proof of common-law marriages, however, the one-year limitation is too short a time period. Moreover, the same concerns of staleness exist in sorting out the property in a formal marriage, yet the law does not require those spouses to take action or forfeit these very significant marital rights and interests. The state's interest is not rationally furthered by

the one-year limitation. Therefore, section 1.91(b) is unconstitutional as a violation of the Equal Protection clause of the United States Constitution. State Farm's motion for summary judgment on the basis of section 1.91(b) should be denied.

### C. *Quasi Estoppel*

Finally, State Farm argues White is barred from asserting that she was common-law married by quasi estoppel. The quasi estoppel doctrine prevents a party from asserting a position to the disadvantage of another and then asserting a right which is inconsistent with the previous position. *Stimpson v. Plano Indep. Sch. Dist.*, 743 S.W.2d 944, 946 (Tex.App.—Dallas 1987, writ denied). Specifically, State Farm contends that when applying for her insurance coverage, White represented to the agent that she was unmarried and that her premiums were calculated on that basis. State Farm argues that White may not now argue that she was married and thus benefit from her misrepresentation.

White argues she told the agent that she had married but that she and her husband were not living together and that he would not be driving the insured vehicle. White maintains that the agent told her that she would be classified as "single" because her husband was not living in the household.

The Court finds that a fact issue exists as to the representations by White and State Farm's agent. Accordingly, State Farm's motion for summary judgment on this issue should be denied.

### STATE FARM'S SUMMARY JUDGMENT MOTION ON EXTRACONTRACTUAL CLAIMS

State Farm's motion for partial summary judgment on Plaintiffs' extracontractual claims is based on the contingency that the Court grant State Farm's motion as to the breach of contract claims. Because the Court has denied State Farm's motion as to the contractual claims, State Farm cannot prevail on any of its arguments on the extracontractual claims. State Farm's Motion for Partial Summary Judgment on Plaintiffs' Ex-

tracontractual Claims should, therefore, be denied.

### CONCLUSION

For the aforementioned reasons, Defendant's motions for partial summary judgment should be denied.

IT IS SO ORDERED.