2000 UT 28

In re Marriage of Juanita GONZALEZ and Martin Briceno.

Juanita Gonzalez aka Juanita L. Briceno, Petitioner and Appellant.

Metropolitan Property & Casualty Insurance Company, Intervenor and Appellee.

No. 970521.

Supreme Court of Utah.

Jan. 28, 2000.

Rehearing Denied May 31, 2000.

Tamara J. Hauge, Salt Lake City, for Gonzalez.

Robert L. Stevens, Salt Lake City, for Metropolitan.

## SUMMARY

DURHAM, Associate Chief Justice:

¶ 1 Petitioner Juanita L. Gonzalez appeals a decision of the district court granting summary judgment in favor of intervenor Metropolitan Property & Casualty Insurance Company ("Metropolitan") and denying her motions to dismiss Metropolitan's complaint in intervention and to amend her complaint. This is an action based on Ms. Gonzalez's petition for adjudication of marriage, brought pursuant to Utah Code Ann. § 30–1–4.5 (Supp.1998), regarding her relationship with Martin Briceno.[1] Metropolitan moved to intervene. Ms. Gonzalez contested the intervention but ultimately stipulated to it. Metropolitan moved for summary judgment on the ground that Ms. Gonzalez failed to complete the adjudication of her petition within the statutory time period. This appeal followed. We reverse and remand for further proceedings, but note the following divergence in the justices' separate opinions concerning the issues: (1) as to the interpretation of Utah Code Ann. § 30–1–4.5 (Supp. 1988) ("ONE–YEAR LIMITATION"), this opinion reflects a majority view, being concurred in by Justices Stewart and Zimmerman; (2) as to the propriety of the trial court's refusal to dismiss Metropolitan as an intervenor below ("INTERVENTION"), Justice Zimmerman concurs in that portion of Justice Russon's opinion, joined by Chief Justice Howe, but only to the extent it holds that intervention pursuant to the stipulation was properly permitted.

## BACKGROUND

¶ 2 According to the petition for adjudication of marriage (the "petition"), Ms. Gonzalez and Mr. Briceno began living together in September, 1983. On October 21, 1995, Briceno set fire to Gonzalez's home. Ms. Gonzalez alleges that her relationship with Briceno "terminated" on that day. At the time, Briceno had insurance through Metropolitan. If Gonzalez was Briceno's spouse at the time of the fire, she would have a claim under the Metropolitan policy. Presumably, premiums were calculated on this basis.

¶ 3 On February 5, 1996, Metropolitan filed a motion to intervene pursuant to rule 24(a) of the Utah Rules of Civil Procedure. Metropolitan asserted that Briceno had no reason to contest the recognition of the alleged marriage and that Metropolitan's interest was therefore not represented in the action. In its memorandum in support of the motion, Metropolitan stated that it moved to intervene because Gonzalez had filed the petition "to establish her insurance claim against Metropolitan." Gonzalez opposed the motion, arguing that Metropolitan had failed to attach a memorandum of points and authorities or appropriate affidavits, as required under rule 4–501 of the Utah Code of Judicial Administration. Gonzalez answered the intervenor's complaint on March 11, 1996. On March 12, 1996, the parties filed a Stipulation for Leave to Allow Metropolitan to Intervene. An order granting Metropolitan leave to intervene was filed on March 12, 1996.

¶ 4 Metropolitan formally denied Ms. Gonzalez's insurance claim on June 4, 1996. On August 7, 1996, the trial court set a date of January 7, 1997, for trial of Ms. Gonzalez's petition, depending on the court's availability. On October 4, 1996, Metropolitan moved for summary judgment. Its motion was based upon "the fact that Ms. Gonzalez did *not* have a uniform reputation as the wife of Martin Briceno," as required under section 30–1–4.5 of the Utah Code. No affidavits were attached. That motion was denied.

¶ 5 A minute entry of January 6, 1997, noted that the trial date, scheduled for the following day, had been stricken. The trial was continued because of a criminal trial that took precedence on the court's calendar. On March 18, 1997, the court ordered a new scheduling conference for April 8, 1997. Trial was reset for August 5, 1997. Gonzalez never requested an accelerated trial.

1. The 1998 version of the statute is exactly the same as the statute originally passed in 1987.

¶ 6 On April 10, 1997, Metropolitan filed a "Motion for Summary Judgment based upon Failure to Comply with Statutory Time Limits," in which it claimed that Ms. Gonzalez's petition should be dismissed because she failed to obtain a judgment concerning her alleged marriage within one year of its termination, as required under Utah Code Ann. § 30-1-4.5. Metropolitan contended that the statutory time period ran from the date the relationship terminated, allegedly October 21, 1995, and that the statute of limitations was not tolled by filing the action. Metropolitan did not contend, and has not argued here, that the statute of limitations expired prior to Ms. Gonzalez's commencement of this proceeding.

¶ 7 In an affidavit in support of her memorandum in opposition, Gonzalez admitted that on October 21, 1995, she considered her relationship with Briceno "permanently terminated." She also indicated, however, that "[s]ince that time, I have re-established a relationship with Martin." Gonzalez filed a second motion to amend her petition to allege the re-establishment of the relationship on April 23, 1997.

¶ 8 On May 8, 1997, Gonzalez moved to dismiss Metropolitan's complaint as intervenor. She asserted that she had stipulated to Metropolitan's intervention based on its alleged suggestion that a decision on her marital status would dispose of all coverage questions in Briceno's insurance policy. She then argued that Metropolitan was not a proper party under rule 24(a) because it had in fact already denied Gonzalez's insurance claim based on lack of coverage. She asserted that Metropolitan's intervention would prejudice the rights and social status of herself and her three children, whose father is Briceno, inasmuch as denial of her petition would prevent all of them from "assuming[ ] legal rights, responsibilities and social status due them under the circumstances of their joint relationships."

¶ 9 In Metropolitan's memorandum in opposition, it argued that its interest in Ms. Gonzalez's status remained, despite its unequivocal denial of coverage to her.

¶ 10 After arguments on all the motions, Gonzalez's motion to amend was denied, as was her motion to dismiss the intervenor's complaint. The court granted Metropolitan's motion for summary judgment based on Gonzalez's failure to comply with the statutory time limit.

¶ 11 In its findings of fact, conclusions of law, and order denying petitioner's motion to dismiss the complaint in intervention, the court concluded that Gonzalez had "presented no valid legal basis for her withdrawal of [the] Stipulation," thus allowing the complaint in intervention to stand. The court also ruled that Metropolitan "falls squarely within rule 24(a)(2) of the Utah Rules of Civil Procedure regarding intervention." In its findings of fact and conclusions of law regarding intervenor's motion for summary judgment, the court held that the statutory limitation period expired on October 21, 1996, which date occurred after the commencement of the action. This date was also prior to the initial trial date set by the court.

¶ 12 In its conclusions of law, the trial court determined that the "petitioner is not and never has been married to Martin Briceno in any solemnized or unsolemnized relationship."

¶ 13 Petitioner raises three issues on appeal. First, she argues that it was error for the trial court to grant Metropolitan's motion for summary judgment dismissing the petition on the ground that the petition was not adjudicated within one year of the termination of the relationship. Second, Ms. Gonzalez contends that the trial court erred in refusing to grant her motion to dismiss Metropolitan's complaint in intervention. Finally, Ms. Gonzalez argues that the trial court should not have denied her motion to amend the petition to allege a continuing relationship with Briceno.

¶ 14 As noted in ¶ 1, this opinion (Durham, J.), joined by Justice Stewart and Justice Zimmerman, determines the result regarding the statute of limitations issue. As to the intervention issue, Justice Zimmerman concurs in that portion of Justice Russon's opinion, joined by Chief Justice Howe, but only to the extent it holds that intervention pursuant to the stipulation was properly permitted.

## STANDARD OF REVIEW

¶ 15 A trial court's grant of summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to a judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *see also Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1385 (Utah 1989). When deciding whether the trial court correctly found that there was no genuine issue of material fact, this court reviews the facts and inferences to be drawn therefrom in the light most favorable to the losing party. *See id.* Additionally, because summary judgment is granted as a matter of law, we give the trial court's legal conclusions no deference and review their decision for correctness. *See White v. Gary L. Deseelhorst, NP Ski Corp.,* 879 P.2d 1371, 1374 (Utah 1994).

■ ¶ 16 This court has not heretofore identified the standard it employs when reviewing a motion to intervene as of right under Utah Rule of Civil Procedure 24(a). *See Lima v. Chambers,* 657 P.2d 279 (Utah 1982) (reversing trial court's denial of intervention but not stating standard of review for that reversal). We now adopt a de novo standard of review when intervention as of right is before us on appeal.[2]

2. The majority of federal appeals courts follow a de novo standard of review when intervention as of right is involved. *See Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 836 (9th Cir.1996) (intervention as of right reviewed de novo); *Alameda Water & Sanitation Dist. v. Browner,* 9 F.3d 88, 90 (10th Cir.1993) (same); *Sierra Club v. Robertson,* 960 F.2d 83, 85 (8th Cir.1992) (same); *United States v. Texas Eastern Transmission Corp.,* 923 F.2d 410, 412 (5th Cir. 1991); *Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir.1989) (same); *Walters v. City of Atlanta,* 803 F.2d 1135, 1151 n. 16 (11th Cir.1986) (reviewing denial of motion to intervene as of right "for error"); *Cook v. Boorstin,* 763 F.2d 1462, 1468 (D.C.Cir.1985) (holding application for intervention as of right seems to pose only question of law, but "we would ordinarily ... give substantial weight to a trial court's findings" regarding whether intervention comports with efficiency and due process). *But see In re Sierra Club,* 945 F.2d 776, 779 (4th Cir.1991) (utilizing abuse of discretion standard).

While several other circuits appear to be adopting an abuse of discretion standard, they make distinctions between intervention as of right and permissive intervention. The standard

## ONE–YEAR LIMITATION

¶ 17 In 1987, the Utah Legislature enacted a statute that recognized the possibility of establishing an unsolemnized marriage. *See* Utah Code Ann. § 30–1–4.5 (Supp.1998).[3] Subsection two of the statute states, in pertinent part, "The *determination or establishment* of a marriage under this section must occur during the relationship described in subsection (1), or *within one year following the termination of that relationship." Id.* § 30–1–4.5(2) (emphasis added).

¶ 18 The trial court found that "[m]ore than one year has passed since the termination of the relationship between Martin Briceno and the petitioner," and that Ms. Gonzalez had therefore not met the requirement that determination of the marriage occur within one year of the relationship's termination. The trial court appeared to assume that the statute required completion of the proceeding, not merely its commencement, within the one-year period. Furthermore, it put the burden of assuring a resolution of the petition on Ms. Gonzalez, stating: "This court is just confident that if a request for expedited disposition had been [sic] in this matter, between January and early October of 1996, we could have brought this matter to a resolution." Final-

seems to inhabit an area somewhere between de novo review and abuse of discretion when intervention as of right is involved. *See International Paper Co. v. Town of Jay,* 887 F.2d 338, 345 (1st Cir.1989); *Harris v. Pernsley,* 820 F.2d 592, 597 (3d Cir.), *cert. denied,* 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); *United States v. Hooker Chems. & Plastics Corp.,* 749 F.2d 968, 990–91 (2d Cir.1984).

3. The statute sets forth the following criteria that must be met in establishing the existence of an unsolemnized marriage:

(1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between two consenting parties who: a) are capable of giving consent; b) are legally capable of entering into a solemnized marriage under the provisions of this chapter; c) have co-habited; d) mutually assume marital rights, duties, and obligations; and, e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.

Utah Code Ann. § 30–1–4.5 (1998).

ly, at the same hearing, the trial court did not permit Gonzalez a second amendment to her petition to allege a resumption of her relationship with Briceno, which she contended would show a continuous relationship from the time they first began living together in 1983.

## STATUTORY INTERPRETATION

¶ 19 The process of statutory interpretation is often a difficult one, as courts try to apply the terms of a statute to an unanticipated situation. As Judge Richard Posner has pointed out:

> Omniscience is always an unrealistic assumption, and particularly so when one is dealing with the legislative process. The basic reason why statutes are so frequently ambiguous in application is not that they are poorly drafted ... and not that the legislators failed to agree on just what they wanted to accomplish in the statute ... but that a statute necessarily is drafted in advance of, and with imperfect appreciation for the problems that will be encountered in, its application.... Matters are not decided until they have to be.

Richard A. Posner, *Statutory Interpretation—in the Classroom and in the Courtroom*, 50 U. Chi. L.Rev. 800, 811 (1983).

¶ 20 Our own legislature seems to have had the same point in mind when it included a severability clause for chapter 246, in which the statutory marriage provision is found, stating that "if any provision of Chapter 246, or the application of any provision to any person or circumstance, is held invalid, the remainder of the chapter is to be given effect without the invalid provision or application." 1987 Utah Laws ch. 246, § 5. Thus, the legislature has acknowledged that unforeseen issues in the application of statutes such as the one involving statutory marriage might arise.

¶ 21 The facts of this case would appear to have been far from the legislature's contemplation when the statute recognizing unsolemnized marriages was enacted.[4] So far as the limited legislative history shows, the apparent aim was to give Utah's Office of Recovery Services an avenue to prevent the exclusion of an alleged "common law" spouse's income when an application for government benefits was made, thus preventing welfare fraud. *See* Floor Debate, remarks of Norman Angus, Director of State Social Services Admin., 47th Utah Leg., Gen. Sess. (Feb. 17, 1987) (Sen. Recording No. 75).[5] Utah has no doctrine of common law marriage, and thus a statutory creation was necessary. The subsection of the statute concerning the amount of time allotted for adjudication of a petition after the relationship's termination was added in an amendment and was apparently designed to protect the *parties* to a putative marriage from fraud or mistake due to long delays in adjudication. The only substantive comment on the amendment appears to be the following:

> This amendment ... brings in a time focus, the other protection that Senator Reese put in the bill yesterday provides that that determination of common law marriage must occur by a court or administrative agency during the relationship or within one year after its [sic] been terminated. I think that gives the protection of having a marriage declared twenty years after the relationship when the parties had no intention of a marriage. I think it would still give protection to the Office of Recovery Services.

Floor Debate, remarks of Sen. Lyle Hillyard, 47th Utah Leg., Gen. Sess. (Feb. 19, 1987) (Sen. CD No. 81B).

¶ 22 Senator Hillyard's remarks suggest that the legislature was concerned with situations in which the couple never intended to

---

4. While the form of unsolemnized marriage recognized by Utah was created only relatively recently by statute, its roots are long and deep, lying in the common law concept of "common law" marriage. There appears to be no meaningful distinction between Utah's statutory scheme and the concept of common law marriage.

5. For a fuller discussion of the legislative history of section 30-1-4.5, see *Recent Developments in Utah Law—Legislative Enactments—Family Law*, 1988 Utah L.Rev. 273.

be married but where, years later, most likely at the time that one of them dies, some party is trying to prove the existence of such a marriage.

■ ¶ 23 In construing a statute, our aim is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve. *See Craftsman Builder's Supply v. Butler Mfg.*, 1999 Utah 18, ¶ 25, 974 P.2d 1194, 1201. When doubt or uncertainty exists as to the meaning or application of an act's provisions, an analysis of the act in its entirety should be undertaken and its provisions harmonized in accordance with the legislative intent and purpose. *See id.* at 1202. " 'One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989) (citation omitted). Further, we have "a duty to construe a statute whenever possible so as to effectuate legislative intent and avoid and/or save it from constitutional conflicts or infirmities." *State v. Bell*, 785 P.2d 390, 397 (Utah 1989).

*1. Statute of Limitations*

■ ¶ 24 Conventional statutes of limitation run until the date on which an action is commenced. The question raised in this action is whether the somewhat unusual language of section 30-1-4.5 was intended to create a novel phenomenon: a statute of limitations not tolled by the filing of an action, so that an action filed in a timely manner could still fail the limitation period due to delays in discovery or a court's crowded docket. The legislature should not be deemed to have created such a potentially unfair rule without clear and convincing language evidencing its intent to do so; the ambiguities created in this statute appear to be the result of nothing more than inartful drafting. It is clear that the legislative purpose of preventing welfare fraud, which gave rise to the time limitation, has nothing to do with Ms. Gonzalez's attempts to establish a statutory marriage to Mr. Briceno, and that strict construction of the subsection regarding the completion of an adjudication of the relationship no later than a year after it allegedly terminated does not further the underlying purpose of the statute. We are not persuaded that the legislature meant to place the burden of crowded court dockets, and other matters completely out of a petitioner's control, solely on the petitioner. In fact, as noted above, in this case the trial was delayed at the beginning of 1997 because a criminal trial took precedence at the last moment.

■ ¶ 25 A more reasonable interpretation of the legislature's intent, which would not upset the underlying purpose of the statute, is that the statute is simply an ordinary statute of limitations which, like all statutes of limitations, requires that an action for adjudication must be *commenced* within a year of the termination of the relationship. This would still protect parties who never meant to be statutorily married from adjudications many years after their relationship has ended, but without placing an undue burden on petitioners who cannot control every circumstance in the judicial arena. In fact, even if the insurer had not intervened in this uncontested action (a point addressed more fully below), given the court's initially scheduled trial date, the petition would not have been decided within the one-year timeframe. It seems unlikely that the legislature intended to create such a trap for the unwary, leading to the dismissal of timely filed, uncontested lawsuits.

¶ 26 State and federal speedy trial acts provide some useful guidance in this area, inasmuch as they also contain requirements that cases be resolved within specific timeframes. Section 77-1-6(1)(h) of the Utah Code, for example, requires that a trial begin within thirty days after arraignment if the accused is not posting bail, as long as the court's other business presents no obstacle to this. *See* Utah Code Ann. § 77-1-6(1)(h) (1990). Even in the criminal trial context, however, where the defendant's Sixth Amendment rights are implicated, the United States Supreme Court has declined to establish "rigid time requirements" to determine whether a defendant's right to a speedy trial was violated. *See State v. Hoyt*, 806 P.2d

204, 208 (Utah Ct.App.1991) (citing *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The Court in *Barker* outlined a four-part test to assess any violation, including "[1][l]ength of the delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. Thus, even when a party has a constitutional right to a speedy trial, delay will be excused where it is not prejudicial. Were the intervenor in this case entitled to such concern, which of course it is not, the "delay" here would not rise to the level of being overly lengthy or prejudicial. Indeed, Metropolitan could not demonstrate any prejudice in this case. Moreover, as Ms. Gonzalez has pointed out, without the insurer's intervention any delays would have been unlikely, except to the extent that they were caused by the court's own docket.

### 2. Constitutional Considerations

¶ 27 Were we to accept intervenor's claim that the legislature meant to create an entirely new type of statute of limitations, the statutory time limitation would be subject to constitutional challenge. For example, in *White v. State Farm Mut. Auto. Ins. Co.*, 907 F.Supp. 1012 (E.D.Tex.1995), the court had to apply a similar Texas statute. The case involved a woman suing her auto insurer under the uninsured motorist clause of her policy, regarding the death of her alleged common law husband. The Texas statute stated: " 'A proceeding in which a marriage is to be proved under this section must be *commenced* not later than one year after the date on which the relationship ended....' "

*Id.* at 1017 (quoting Tex. Fam.Code Ann. § 1.91(b) (West Supp.1989) (emphasis added).[6]

¶ 28 The court in *White* held the Texas one-year statutory limitation period unconstitutional under the United States Constitution on equal protection grounds. The court found that the statute made a distinction between "ceremoniously married persons" and "informally or common-law married persons," and that the one-year period to commence an action must be reasonably related to a legitimate governmental interest. *See White*, 907 F.Supp. at 1017–18. Finding that the interest in requiring proof of the existence of a common law marriage in a timely fashion was to insure that Texas courts did not have to rely on stale evidence in divorce and probate proceedings, the court reasoned that while the interest was legitimate, the statutory scheme was not rationally related to the goals. *See id.* at 1018.

¶ 29 Noting the severity of the bar to commencing an action to prove a common law marriage within just one-year of the relationship's termination, the *White* court was particularly concerned about the community property rights that would be extinguished and the legitimacy of the two children of the marriage that would be unresolved. *See id.* The court relied on a United States Supreme Court case that held a similar Texas statute regarding a one-year period to prove the legitimacy of a child violated equal protection because the time period was too short in light of the important rights involved. *See id.*; *Mills v. Habluetzel*, 456 U.S. 91, 100, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982).[7] *But*

---

6. The court in *White* noted that although the 1989 version of the Texas statute had been recently amended, the earlier version of the statute specifically instructed that the 1995 amendment not be retroactively applied. *See White*, 907 F.Supp. at 1017 n. 2 (citing Tex. Fam.Code Ann. § 1.91(b) (West Supp.1996) (Act of May 29, 1995, 74th Leg., R.S., ch. 891, § 1)). The 1995 amendment extended the statute of limitations to two years, and by the terms of the amendment, even that time period is not absolute. *See Shepherd v. Ledford*, 926 S.W.2d 405, 409 n. 1 (Tex.App. 1996).

7. The constitutionality of the one-year statutory limitation period is not before us on this appeal,

since Ms. Gonzalez concededly filed her petition within one-year of the termination of her relationship. Metropolitan argues that the case of *Bunch v. Englehorn*, 906 P.2d 918 (Utah Ct.App. 1995), is dispositive here and stands for the proposition that a petition for adjudication of marriage must be brought and decided within a year of the relationship's termination. Intervenor misconstrues this case. In *Bunch*, a *divorce* action was filed ten months after the parties separated. *Id.* at 919. The trial court dismissed the complaint on the ground that no statutory marriage had been established and it therefore lacked subject matter jurisdiction over the action. *Id.* On appeal, the court of appeals explicitly refused to consider constitutional arguments

*see Shepherd,* 926 S.W.2d at 405–09 (applying, without mentioning *White,* the Texas statute involved in *White* according to its terms).

¶ 30 In light of the considerations discussed above, we construe the statute of limitations in question to avoid potential unconstitutionality, and conclude that section 30–1–4.5 requires only the *filing* of a petition for adjudication of marriage within one year after the termination of the relationship. Our decision rests on our analysis of the legislature's intent, and therefore, we do not reach the constitutional arguments raised by Ms. Gonzalez. *See Sutherland on Statutory Construction* § 45.11, at 49 (rev. 5th ed.1992). Further, in light of our ruling, we do not reach the issue of whether the trial court erred in denying Ms. Gonzalez's motion to amend her second petition. Should Ms. Gonzalez still wish to amend after remand, she should renew her motion, and we presume the court will give her motion due consideration in light of this opinion. Typically, motions to amend are liberally granted. *See Timm v. Dewsnup,* 851 P.2d 1178, 1183 (Utah 1993).

## INTERVENTION

¶ 31 Next, we turn to Ms. Gonzalez's contention that it was error for the trial court to deny her motion to dismiss Metropolitan's complaint in intervention. Gonzalez initially challenged Metropolitan's motion to intervene, but later reversed course and stipulated to the intervention.

¶ 32 Stipulations between the parties are usually honored by the courts. *See First of Denver Mortgage Investors v. C.N. Zundel & Assocs.,* 600 P.2d 521, 527 (Utah 1979). Nevertheless, the courts may ignore such agreements "when points of law requiring judicial determination are involved." *Id.* No consideration was undertaken by the trial court of Metropolitan's standing to intervene in Ms. Gonzalez's petition to adjudicate marriage;

nevertheless, the question of the legitimacy of Metropolitan's presence in this lawsuit implicates significant public policy concerns that should be addressed on appeal.

¶ 33 Pursuant to Utah Rule of Civil Procedure 24(a), an applicant must be allowed to intervene if four requirements are satisfied: (1) the application is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties.

¶ 34 Spouses are ordinarily the only appropriate parties to divorce litigation. *See* Frank D. Wagner, Annotation, *Divorce– Third Parties' Claims,* 63 A.L.R.3d 373, 378 (1975). An exception to this is generally made, however, for third-party claims that concern the "actual or equitable ownership of real property, or to some other asserted interest such as an encumbrance upon real property, or the ownership of personal property." *Id.* (footnotes omitted). This case, which concerns a petition for adjudication of marriage, is analogous to cases where a third party attempts to intervene in a divorce action. The threshold question here, for both the requirements of rule 24(a) and intervention in a marriage context, is whether Metropolitan has an interest relating to a property or transaction which is the subject of the action.

¶ 35 Metropolitan never alleged any "interest" in any property or transaction relating to the subject matter of the petition. In its complaint in intervention, prior to the stipulation, Metropolitan stated as its basis for intervention that it "believes that this petition is filed as an attempt to defraud an insurance company by falsely attempting to establish a marriage where none existed."

raised by the appellant, stating that these arguments were not sufficiently articulated below. *Id.* at 921. Finding section 30–1–4.5 to be unambiguous regarding the time limitation, it affirmed the trial court. *Id.* We agree with Ms. Gonzalez that her case is clearly distinguishable inasmuch as it involves a petition to establish a marriage,

not to obtain a divorce. We believe that today we begin to clarify some of the issues left unresolved by the court in *Bunch.* However, since the constitutionality of a one-year statute of limitations is not before us, we express no opinion on the issue.

This is clearly not an acceptable reason for intervening as of right in a proceeding to establish the existence of a marriage. Laudable as attempting to prevent fraud is, it does not approach the type of property interest that is typically contemplated by courts considering this issue in the context of an intervenor's application in a divorce proceeding.

¶ 36 Looking to the treatment of this issue in other jurisdictions, we find that while most allow intervention in divorce proceedings, such intervention is granted only after the intervenor meets a heavy burden. Analyzing an identical intervention rule in West Virginia, the court found that "[a] third party seeking intervention in a divorce proceeding for the purpose of protecting a property interest assumes the burden of demonstrating an interest which will outweigh the substantial privacy interests of the divorcing parties." *Boyle v. Boyle*, 194 W.Va. 124, 459 S.E.2d 401, 404 (1995). In *Boyle*, the court denied intervention to a third party claiming a right to buy stock obtained by the wife as part of the divorce settlement. *See id.* at 405. Embracing the rationale of the *Boyle* court, another court recently allowed the second wife to intervene in a proceeding brought by the first wife, challenging the validity of her divorce settlement. *See Cohen v. Cohen*, 748 So.2d 91 (Miss.1999). There, the court stressed (at least seven times in one form or another) the "rare fact driven" nature of this case and that it is a significant departure from the normal rule. *See id.* at 92–94. At the outset of its discussion in *Cohen*, the court made it clear that under its intervention rule, identical to our own, "an economic interest alone in the litigation is insufficient to allow intervention." *Id.* at 93. (citations omitted).

¶ 37 Other jurisdictions have adopted a similar rationale. For instance, in *In re Marriage of Perkinson*, 147 Ill.App.3d 692, 101 Ill.Dec. 137, 498 N.E.2d 319 (1986), an order of dissolution of marriage was entered shortly before the former husband drowned while working on his employer's tugboat.

The employer, however, potentially liable for the drowning death of the man, was not permitted to intervene in an action seeking to set aside the order of dissolution. *See id.* 101 Ill.Dec. 137, 498 N.E.2d at 324. The court reasoned that though the former wife might bring a wrongful death action against the employer if the dissolution order was set aside, the employer's current interest in any future action that she might bring was at most "speculative, hypothetical, and incidental." *Id.*

¶ 38 Likewise, in *Fisher v. Fisher*, 546 N.W.2d 354, 358 (N.D.1996), the court found that the children of divorcing parents did not have a right to intervene in their divorce proceedings regarding the appointment of a receiver for their closely held company, even if such appointment might affect the value of the children's shares in the company. The court's analysis begins by stating that "[a] 'direct' interest is one that is not 'remote' or 'contingent.' " *Id.* at 356 (citing 3B James W. Moore, *Moore's Federal Practice* ¶ 24.07[2], at 24–54 (2d ed.1995)). It continues, "[a] 'legally protectible' interest is one that 'the *substantive* law recognizes as belonging to or being owned by the applicant.' " *Id.* (quoting *New Orleans Pub. Serv. v. United Gas Pipe Line*, 732 F.2d 452, 464 (5th Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) (emphasis in original)). Finally, the court states that "[a] party who qualifies as a 'real party in interest' under rule 17(a), F.R. Civ. P., is a party with a 'legally protectible' interest." *Id.* (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1543, at 339 (2d ed. 1990)) ("[T]he real party in interest requirement ... must be satisfied for purposes of asserting ... a claim by an intervenor."). Since the court found that the valuation of minority shares in a close corporation was a speculative undertaking, it held that the children did not have an interest in their parents' property that was "direct, substantial, and legally protectible." *Id.* at 356.[8]

---

**8.** *See also Arnold v. Arnold*, 214 Neb. 39, 332 N.W.2d 672, 674 (1983) (denying intervention to parents of one of the divorcing parties on grounds that they attempted to introduce into dissolution proceeding a number of legal actions involving themselves and divorcing parties that had nothing to do with *division* of marital assets); *Nielson v. Thompson*, 982 P.2d 709, 712

¶ 39 The claims of the parties who attempted to intervene in these actions are entirely analogous to those of the insurer in the present action. The privacy interests of a couple in determining their status and property rights without the interference of outside parties are clearly paramount. Certainly, Metropolitan's "interest" in this action is no greater than the employer in *Perkinson*, who was likely to be sued if the order of dissolution was set aside.

¶ 40 Many of the cases denying intervention also find that it would be possible for the intervenor to bring a separate action to enforce any alleged rights, thereby avoiding their inappropriate insinuation into the private affairs of a married couple. *See Ex parte Kirkley*, 418 So.2d 118, 121 (Ala.1982) (former wife could not intervene in former husband's subsequent divorce proceeding to obtain any money owed her under their divorce decree, but rather could file contempt suit); *Fisher*, 546 N.W.2d at 358; *Boyle*, 459 S.E.2d at 405.[9]

¶ 41 Metropolitan has failed to show any interest in this action that requires its intrusion into an otherwise private matter between two persons regarding the nature of their relationship. In fact, as petitioner argues, Metropolitan denied Ms. Gonzalez's insurance claim during the pendency of the proceedings below, making it clear that it could proceed without the court's adjudication of this matter. Accordingly, adopting the rationale of the court in *Boyle*, I would hold that the trial court erred in permitting Metropolitan to intervene, and that it should have granted Ms. Gonzalez's motion to dismiss. As noted earlier, this view is joined only by Justice Stewart, and a majority of the court affirms on this question.

## PROCEDURE ON REMAND

¶ 42 Having found that section 30–1–4.5 requires only that an action to determine or establish a marriage be *commenced* within a year of the termination of the relationship,

we reverse the trial court's grant of summary judgment in favor of Metropolitan on the issue of the statute of limitations.

¶ 43 On remand, should Gonzalez choose to proceed with the petition for adjudication of marriage, the trial court should apply a preponderance of the evidence standard of proof to the establishment of a marriage under the statute. *See Hansen v. Hansen*, 958 P.2d 931, 935–36 (Utah Ct.App.1998). While no single factor is determinative in the trial court's analysis, and while "numerous factors should be considered," evidence proving each of the five statutory elements is essential. *See Whyte v. Blair*, 885 P.2d 791, 793 (Utah 1994). The parties must make a showing of capacity to marry, capacity to give consent, assumption of marital rights and duties, cohabitation, and a holding out as, and acquiring a uniform and general reputation as, husband and wife. *See* Utah Code Ann. § 30–1–4.5(1)(a)–(e) (1998). One commentator has noted "the success of the common law marriage doctrine, and especially of the requirement of 'holding out,' in distinguishing between cases in which the parties' intent was marriage and those in which they cohabited without any such intent." Cynthia Grant Bowman, *A Feminist Proposal to Bring Back Common Law Marriage*, 1996 Or. L.Rev. 709, 749 (1996). At trial, the court will have to determine whether Ms. Gonzalez meets this standard. The dispute regarding the existence of a "uniform" reputation is a material fact in this case and to the extent that the trial court's grant of summary judgment was based on that ground, it may not stand.

¶ 44 Although not discussed by any party to this appeal, we note a point that may assist in the disposition of the case on remand. On March 26, 1999, after the entry of summary judgment in this case, Gonzalez filed an action in federal district court against Metropolitan, alleging various contractual and tortious causes of action related to its insurance policy. It is not clear from

(Wyo.1999) (denying intervention to creditor where divorcing husband had no "possessory or marketable interest" in his spouse's property, making payment of his debt to creditor unavailable from such source).

9. Metropolitan would be able to contest its obligation in an action on the insurance contract, which is not before us on this appeal.

the complaint in that case whether the claim therein relies on the case of *Proctor v. Insurance Co. of N. Am.*, 714 P.2d 1156 (Utah 1986), but it appears that this case is highly instructive. In *Proctor*, two claimants disputed the disbursement of the proceeds of two insurance policies. *See id.* at 1157. The policies did not name a beneficiary by name, but they both insured the "member and spouse." *Id.* At the time the policies were purchased, the insured was married to his second wife. His divorce, however, from his first wife was not finalized until nine months after his ceremony of marriage to his second wife. Thus, the second marriage was illegal. *See id.* at 1158.

¶ 45 In response to the first wife's contention that her minor daughter was the rightful claimant under the policy, the court held that the principles of contract and insurance governed in this instance, and since the second wife was clearly the intended beneficiary, she should receive the proceeds of the policy. *See id.* The court in *Proctor* noted, among other things, that the insured was required to pay additional premiums for coverage for his "spouse." *See id.* at 1159. *Proctor* was not cited by either party in the case before us, but we note that it has a direct bearing on Metropolitan's obligation to Gonzalez under its policy, and further that, while a successful adjudication of marriage in state court would presumably determine her federal court claims, it would also not be a *sine qua non* for such a determination. *Proctor* appears to stand for the proposition that in some circumstances one who is not legally married may nevertheless be a "spouse" for purposes of coverage in an insurance policy, depending on the language of the policy and the intent of the parties. *See id.* at 1158–59.

## CONCLUSION

¶ 46 The judgment of the trial court is affirmed in part, but reversed on the statute of limitations issue, and the matter is remanded for further proceedings consistent with this opinion.

¶ 47 Justice STEWART concurs in Associate Chief Justice DURHAM's opinion.

ZIMMERMAN, Justice, concurring:

¶ 48 I concur in that portion of the opinion of Associate Chief Justice Durham that holds that a proceeding for the determination of marriage must be commenced within a year, but not completed. That is a more reasonable interpretation of the statute, and it seemingly protects the state's interest in avoiding fraud.

██ ¶ 49 I concur in that portion of Justice Russon's opinion to the extent it holds that intervention pursuant to the stipulation was properly permitted. Justice Durham looks to cases from other jurisdictions concerning interventions in divorce proceedings for guidance, and then applies those rules and policies to a proceeding to determine a marriage, labeling the situations "analogous." She would hold that a party in Metropolitan's situation cannot be permitted to intervene, even on stipulation, because it would violate public policy. I cannot accept the easy public policy analogy Justice Durham draws between determination of marriage actions under the Utah statute and actions brought to end an existing legal marriage, particularly where the proceeding to determine a marriage appears to have been commenced solely to give Gonzalez legal entitlement to claim under the insurance policy and to sue Metropolitan. In such a situation, I would hold that the company's interest is not so speculative that Gonzalez cannot be permitted to agree to have the company's challenges adjudicated in the determination proceeding. It may have been tactically unwise for Gonzalez to have stipulated to the intervention in that context, but she did so. I see no overriding public policy against permitting that stipulation to be made effective.

¶ 50 Unlike Justice Russon, however, I would not address the broader question of when third parties may properly be permitted to intervene in adjudications concerning a marriage over the objections of a party to the actual or putative marriage in question. Therefore, I do not join in that portion of Justice Russon's opinion.

RUSSON, Justice, dissenting:

¶ 51 I dissent from Justice Durham's lead opinion. I would affirm all of the trial court's rulings.

¶ 52 First, the trial court did not err in dismissing Gonzalez's petition for failure to meet the jurisdictional time limitation set forth in Utah Code Ann. § 30–1–4.5. Justice Durham's opinion does not even attempt to read the statute on the basis of its plain language, but instead simply rewrites its provisions by attributing motives to the legislature. Although the requirement relating to conclusion, rather than commencement, of legal proceedings is unusual and could potentially raise constitutional concerns in certain hypothetical scenarios, this case is not one of them. Gonzalez had thirteen years in which to commence a petition for adjudication and failed to do so. Moreover, after filing her petition, she made no attempt to obtain an adjudication within the time limit. The trial court specifically found that an accelerated schedule could have been arranged if Gonzalez had sought one. This is not a case where petitioner was prevented from meeting the statutory deadline by events wholly beyond her control. Rather, it is evident from the record that Gonzalez simply failed to recognize the nature of the time limitation and falsely assumed it functioned as a traditional statute of limitations that had been satisfied at the time the petition was filed. It is not the constitutional duty of this court to rescue parties from their inability to read the plain language of a statute. I would affirm the court's decision in view of the particular facts of this case.

¶ 53 Second, as recognized by Justice Zimmerman's opinion, the trial court correctly denied Gonzalez's motion to dismiss Metropolitan's complaint. Although Justice Durham undertakes an analysis of the standard of review relating to contested motions to intervene as of right, she fails to correctly reference the standard of review for the only question properly brought to us on appeal:

the court's refusal to set aside the stipulation for intervention. She thus attempts to establish a new standard of review for a question not properly brought before us on appeal. This purported establishment of a new standard of review has not been joined by a majority of this court.

¶ 54 Justice Durham implicitly relies on our statement in *First of Denver Mortgage Investors v. C.N. Zundel & Associates,* 600 P.2d 521, 527 (Utah 1979), that a "court" is not bound by stipulations between parties "when points of law requiring judicial determination are involved."[1] Durham Op. ¶ 32. However, this statement in *First of Denver* (whatever it means) clearly does not empower us to review de novo a trial court's decision to set aside a stipulation as to matters of law. Rather, *First of Denver* recognizes that the *trial* court—not the Supreme Court—is entrusted with the *discretion* whether to honor such a stipulation between parties. Indeed, as we further stated in that case, whether a stipulation involves issues of fact or law, "[p]arties are bound by their stipulations unless relieved therefrom by the [trial] court, which has the power to set aside a stipulation entered into inadvertently or for justifiable cause." *Id.; see also* 73 Am.Jur.2d *Stipulations* § 13, at 548 (1974) ("It is generally recognized that it is within the discretion of the court to set aside a stipulation of the parties relating to the conduct of a pending cause."). As a result, a stipulation not set aside below will be reversed on appeal only if the trial court abused its discretion. The well-established abuse of discretion standard of review requires us to "presume that the discretion of the trial court was properly exercised unless the record clearly shows the contrary." *Goddard v. Hickman,* 685 P.2d 530, 534–35 (Utah 1984).[2]

1. I must confess that the scope and import of this statement, as quoted in isolation by Justice Durham, utterly escapes me. So far as I am aware, all disputed cases brought before courts involve "points of law requiring judicial determination." Hence, a literal reading of this passage would require all courts everywhere to disregard all stipulations for the sake of rendering a full-blown independent determination of the legal soundness of the parties' choices.

2. In this regard, Justice Durham states that the trial court failed to consider whether Metropoli-

tan had standing to intervene in this action. Durham Op. ¶ 32. But Gonzalez did not appeal any alleged failure of the trial court to enter specific findings that Metropolitan had standing to intervene at the time it approved the stipulation, nor is there any indication that the trial court was obligated to do so. Rather, Gonzalez appeals the later denial of her motion to dismiss Metropolitan's complaint in intervention. With respect to that motion, the court received extensive briefing on Gonzalez's motion, heard oral argument, and entered findings of fact and rul-

¶ 55 Employing the correct standard of review, I would uphold the trial court's ruling denying Gonzalez's petition to dismiss Metropolitan's complaint. In this case, the trial court carefully reviewed the particular facts and circumstances before it and rendered a reasoned opinion refusing to set aside the stipulation. It found there was a sound legal basis for Metropolitan's intervention and that Gonzalez had failed to meet her burden of showing why the stipulation should be set aside.[3]

¶ 56 Finally, I would hold that Metropolitan has a right to intervene in this action. Contrary to Justice Durham's assertion, this case is not "analogous to cases where a third party attempts to intervene in a divorce action." Durham Op. ¶ 34. In a divorce action, the status of the marriage relationship (and the attendant legal and personal interests that attach to that relationship) have already been established. Because divorce constitutes such a fundamental alteration in the lives of a husband and a wife, the law justifiably presumes that a divorce will be sought for legitimate personal reasons. Intervention in divorce cases is typically sought by creditors who claim that their interests are implicated by the disposition of the spouses' financial assets. Such interventions are disfavored because they present a substantial risk of confusing the central issues relating to the parties' already-established private relationship. Moreover, the likelihood that parties to a marriage will seek a divorce for the sole or primary purpose of

defrauding or damaging a creditor is small.[4] Hence, courts properly impose more stringent standards when entertaining applications for intervention in divorce cases.

¶ 57 The reasons for denying intervention in most divorce cases manifestly do not apply to the facts of this particular case. In this case, Metropolitan specifically alleged a fraudulent basis for the marriage petition. In its complaint in intervention, Metropolitan asserts that "Juanita Gonzalez's sole purpose in filing this petition is to attempt to create a relationship of husband and wife between herself and Martin Briceno for the sole purpose of obtaining insurance coverage under a policy issued by Metropolitan to Martin Briceno." In other words, Metropolitan contends that Gonzalez and Briceno had not actually met the criteria of the unsolemnized marriage statute at the time of the fire and that they did not actually believe they met the criteria. If this contention is proven correct, Gonzalez's attempt to retroactively establish a legal status for the sole purpose of obtaining insurance benefits would constitute fraud and manipulation of a state statute. I submit that where there is a good faith assertion that a petition to validate an unsolemnized marriage is filed for fraudulent purposes, the principles governing permissive intervention and the statutory policies underlying the marriage statute grant a right of intervention. A party clearly has a right of intervention in an action that was brought for the sole purpose of defrauding that party.[5]

---

ings of law that specifically treated Metropolitan's standing to intervene. There is no basis in those careful and correct findings for us to attribute an abuse of discretion.

3. Gonzalez's primary argument in her motion was that she had been misled by Metropolitan's counsel into believing there were no other potential bases in the insurance contract for denying her claims. The trial court correctly found that Metropolitan had reserved its right to deny coverage under other provisions of the contract and had notified Gonzalez that it reserved the right to do so from the outset.

4. It was suggested at oral argument that annulments might present a closer analogy and could be affected by our decision here. Whether or not annulment is an adequate analogy, it does not alter the fundamental policies governing inter-

vention in the particular circumstances of this case. To the extent there is a properly supported allegation that parties to a relationship are attempting to alter their legal status, *where that status (and the attendant privacy rights it entails) is in doubt,* and they are attempting the alteration for the sole or primary purpose of deceit or fraud (and the other criteria of rule 24 are met), a right of intervention should be granted. Moreover, to the extent we find it necessary to craft particular rules to meet new circumstances, we may do so when the proper case arises.

5. It is no answer to state, as does Justice Durham, Durham Op. *supra* note 9, that Metropolitan may litigate its concerns in the context of a separate contract action on the insurance policy. Metropolitan obviously cannot litigate, in the context of a separate contract dispute, a decision

¶ 58 Given the fact that Metropolitan is alleging a fraudulent basis for the petition, and because the retroactive establishment of an unsolemnized marriage does not proceed from the same presumptions of the established legal status inherent in any divorce action, no special heightened burden applies to Metropolitan's application for intervention. Consequently, the issues regarding the right of intervention are governed by the traditional standards of Utah Rule of Civil Procedure 24(a).

¶ 59 According to that rule, the four traditional requirements for intervention are met. First, there is no dispute that the application was timely; second, Metropolitan has a clear interest in avoiding the payment of fraudulent insurance claims; third, Gonzalez's petition may impair that interest if Metropolitan does not have the opportunity to demonstrate that the petition has been brought for fraudulent purposes; and fourth, no party other than Metropolitan has a clear interest or opportunity to present evidence demonstrating that Gonzalez's petition is fraudulent.

¶ 60 The trial court correctly dismissed Gonzalez's petition for failure to meet the time limitation in Utah Code Ann. § 30–1–4.5; it did not abuse its discretion in denying Gonzalez's request to ignore her stipulation; and it correctly refused to dismiss Metropolitan's complaint in intervention. I would affirm the trial court on all grounds.

¶ 61 Finally, I write to express my disapproval of Justice Durham's apparent attempt to give legal advice to one of the parties. She states in her section titled "Procedure on Remand" that "[a]lthough not discussed by any party to this appeal, we note a point that may assist in the disposition of the case on remand." Durham Op. ¶ 44. However, the issue she thereafter discusses has nothing to do with any disputed legal question this court believes is likely to occur on remand to *the district court. See State v. James,* 819 P.2d 781, 795 (Utah 1991). Rather, she provides an advisory opinion that is apparently exclusively related to collateral and factually distinct proceedings in *federal court.* She does so under the apparent presumption that peti-

regarding marital status that has been established and recognized by another court of com-

tioner's counsel has failed to locate relevant, perhaps even dispositive, authority relating to petitioner's federal claim. This court has no business giving such advice to parties represented by counsel. Nor can we provide such advice to a federal court when no questions have been properly certified from that court. *See* Utah Code Ann. § 78–2–2(1) (1996).

¶ 62 Chief Justice HOWE concurs in Justice RUSSON's dissenting opinion.

¶ 63 Justice STEWART acted on this opinion prior to his retirement.