**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**TEXAS EASTERN TRANSMISSION CORPORATION, d/b/a Texas Eastern Gas Pipeline Company, Defendant–Appellee,**

v.

**The COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Movant–Appellant.**

No. 89–6307.

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1991.

Carl B. Schultz, David Wersan, Central Region Litigation, Martin H. Sokolow, Jr., Harrisburg, Pa., for movant-appellant.

James W. McCartney, Carol E. Dinkins, Arthur E. Murphy, Vinson & Elkins, Bolivar C. Andrews, Vice President Law, Houston, Tex., for defendant-appellee.

Frank A. Conforti, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., Robert L. Klarquist, David C. Shilton, Land & Natural Resource Div. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GARZA and DAVIS, Circuit Judges.

CLARK, Chief Judge:

The only issue in this appeal is whether the Commonwealth of Pennsylvania (Pennsylvania) should have been allowed to intervene in a civil action brought by the Environmental Protection Agency (EPA) against Texas Eastern Transmission Corporation (Texas Eastern). The district court held that Pennsylvania was not entitled to intervention of right under Fed.R.Civ.P. 24(a) or permissive intervention under Fed. R.Civ.P. 24(b). We affirm the denial of intervention of right and dismiss the appeal of the denial of permissive intervention.

## I. FACTS AND PROCEEDINGS BELOW

The facts in this case are undisputed. Texas Eastern operates an interstate natural gas pipeline system that extends over 9,600 miles through 16 states from Texas to New York. The pipeline system passes through Pennsylvania. In 1985 or 1986, the EPA learned that Texas Eastern was allowing polychlorinated biphenyls (PCBs) to escape into the environment at 89 sites in 14 states along the pipeline system. Nineteen of these sites were in Pennsylvania. Accordingly, the EPA commenced an investigation and entered into discussions with Texas Eastern concerning appropriate responses to the contamination. In November of 1987, the EPA announced that it had reached an agreement in principle with Texas Eastern regarding a cleanup of the sites.

On June 6, 1988, the EPA filed a complaint in the district court alleging that Texas Eastern had violated the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2601 *et seq.*, the EPA's regulations implementing the TSCA, Subtitle C of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6921 *et seq.*, and the EPA's regulations implementing the RCRA. The EPA also sought recovery under Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607. Along with the complaint, the EPA filed a proposed consent decree which the EPA and Texas Eastern had negotiat-

ed. Two days later, the EPA moved for a stay of the district court proceedings to allow for notice and comment on the proposed consent decree. The district court granted the motion and stayed the proceedings for 60 days. Pennsylvania filed comments on the decree.

After the EPA and Texas Eastern submitted the proposed consent decree and before the stay expired, Pennsylvania and several other states also filed motions to intervene. The United States opposed the motions, and Texas Eastern opposed intervention of right, but did not oppose permissive intervention subject to certain conditions. The district court allowed all parties to fully brief and argue the intervention issues. On October 11, 1989, the district court entered a memorandum opinion and order denying all intervention motions. The district court also approved and entered the consent decree. Pennsylvania now appeals the district court's denial of intervention. The other states have not appealed.

## II. DISCUSSION

### A. *General principles—Rule 24.*

Rule 24 represents "an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending." *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C.Cir.1969) (en banc). However, intervention may be sought in a wide variety of situations involving unique facts and procedural postures. *See generally,* Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721, 722–23 (1968). Because Rule 24 attempts to address all of these situations, the facts and procedural posture of each case are important, and it is often true that "general rules and past decisions cannot provide uniformly dependable guides." *Smuck,* 408 F.2d at 179.

In today's case, the EPA and Texas Eastern conducted extensive negotiations which culminated in a comprehensive settlement

prior to the filing of the complaint. Pennsylvania has its own statutory enforcement scheme through which it protects its environment and its citizens according to its own judgment. In fact, Pennsylvania has already undertaken preliminary enforcement efforts against Texas Eastern under its own laws. These considerations form the background against which we analyze Rule 24.

### B. *Intervention of right.*

Intervention of right is governed by Fed. R.Civ.P. 24(a) which provides:

> Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Pennsylvania does not claim that a statute confers an unconditional right to intervene under subpart (1). Our analysis therefore proceeds under subpart (2).

■ The *de novo* standard governs review of district court rulings on all Rule 24(a) requirements except for timing. *See Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir.1987) (per curiam). Timeliness is not involved here.

■ Fifth Circuit precedent establishes that "the inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application.... [and] intervention of right must be measured by a practical rather than technical yardstick." *United States v. Allegheny–Ludlum Indus., Inc.,* 517 F.2d 826, 841 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). This consideration is important because Pennsylvania's arguments in support of intervention of right

rest on a technical rather than a practical application of Rule 24(a)(2).

■ In order to show entitlement to intervention of right under Rule 24(a)(2), Pennsylvania must demonstrate an interest in the subject matter of this action and that its disposition may realistically impair that interest. Pennsylvania claims an interest in protecting its environment and its citizens through enforcement of its own environmental laws. Pennsylvania also suggests that its environmental laws may require Texas Eastern to undertake additional cleanup efforts beyond those mandated by the consent decree. Pennsylvania argues that entry of the consent decree may impair its interest in protecting its environment and its citizens in three ways: (1) the consent decree may adversely affect Pennsylvania's enforcement efforts because of the principles of *res judicata* and *stare decisis,* (2) the consent decree may preempt Pennsylvania laws, and (3) the consent decree may cause Pennsylvania to have to litigate the preemption issue in a subsequent action against Texas Eastern. However, Pennsylvania has failed to demonstrate the requisite practical impairment.

■ Pennsylvania points out that the amended Rule 24(a) no longer requires a showing that the applicant will be bound by the disposition of the action and that the current practical impairment standard represents a liberalization of the pre–1966 version of the rule. *See* 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1903 (2d ed. 1986). Nevertheless, "[l]iberality 'does not equate with rights of indiscriminate intervention' and the rule continues to set bounds that must be observed." *See id.* § 1904 at 239 (footnote omitted) (quoting *Stadin v. Union Elec. Co.,* 309 F.2d 912, 918 (8th Cir.1962), *cert. denied,* 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963)).

### 1) *Res judicata* and *stare decisis.*

■ Pennsylvania maintains that the consent decree's cleanup provisions may have a *res judicata* or *stare decisis* effect and that this may impair Pennsylvania's ability to protect its environment and citi-

zens through the enforcement of Pennsylvania laws. Pennsylvania's brief states:

> In view of the fact that the Consent Decree represents a complicated and extensive agreement regarding the Texas Eastern sites, entered into by the federal government agency charged with protecting the Nation's environment, a judge might conclude that Texas Eastern should not be required to undertake characterization activities in excess of those required by the Consent Decree, or that Texas Eastern should not be required to pay civil penalties or oversight costs in excess of those required by the Consent Decree.

Appellant's brief at 29–30.

Pennsylvania's argument is without merit. First, Pennsylvania is not a party to this action. Pennsylvania has failed to explain how a settlement can have adverse *res judicata* effects on a nonparty. Pennsylvania has also failed to explain how this consent decree could have a *stare decisis* effect on Pennsylvania's enforcement efforts. *See Allegheny–Ludlum*, 517 F.2d at 845. Second, the consent decree contains ample protections for Pennsylvania's laws. Under the heading "Parties Bound," the consent decree states that it is binding on "Texas Eastern, its officers, agents, employees, subsidiaries, successors and assigns, and upon the United States." It also states that "the parties recognize that the states are not parties to this Consent Decree...." Section XXV of the consent decree states: "Except as provided expressly in Section XXIV [conditional release and covenant not to sue by the United States], nothing in this Consent Decree shall excuse Texas Eastern from complying with the requirements of all applicable federal, state or local laws and regulations." Third, Pennsylvania's argument that a future judge might subjectively determine that the burden of complying with the consent decree relieves Texas Eastern of its obligations under Pennsylvania law is without merit. Such a theoretical possibility cannot constitute the requisite practical impairment in this case under this circuit's emphasis on a practical reading of Rule 24(a)(2).

Pennsylvania advances one other argument on the possible *stare decisis* effect of the district court's order. Pennsylvania argued to the district court that the EPA lacked authority to enforce the RCRA with respect to the Pennsylvania sites. The district court held that this argument was without merit. Pennsylvania now contends that the district court's ruling that the EPA was authorized to enforce the RCRA might prejudice Pennsylvania in a future "dispute as to the EPA's authority to take action in Pennsylvania." Appellant's brief at 32 n. 39. Pennsylvania fails to explain how the district court's ruling might impair Pennsylvania's interest in protecting its environment and its citizens. The district court's fact-specific ruling had nothing to do with Pennsylvania's ability to enforce its own laws. *Cf. Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828–829 (5th Cir. 1967).

### 2) Preemption.

Pennsylvania and the United States agree that the consent decree itself should have no preemptive effect on state laws and that any preemption of state environmental laws would result from existing federal statutes or regulations that are not affected by the disposition of this action. Pennsylvania suggests, however, that it is possible that a judge in subsequent litigation brought by Pennsylvania might hold that the consent decree preempts Pennsylvania's environmental laws. Pennsylvania therefore argues that, in the unlikely event that a judge so rules, the consent decree will have impaired Pennsylvania's ability to protect its interests.

As the movant, Pennsylvania has the burden of demonstrating its entitlement to intervene. Speculation does not furnish an adequate explanation of how the entry of a consent decree between the United States and a private corporation could create additional preemption beyond the preemption created by existing statutes and regulations. Absent some cogent explanation of how the decree in this case could preempt state laws, Pennsylvania's argument fails to establish a reasonable possibility that

the disposition of this action creates any realistic impairment of Pennsylvania's ability to enforce its environmental laws. A contrary holding would represent a technical rather than a practical interpretation of Rule 24(a)(2).

Pennsylvania maintains, however, that, in the district court, the United States devoted a lengthy portion of its brief to the subject of preemption. Pennsylvania argues that the complexity of the United States' argument "suggests that the question is not entirely free from doubt." Pennsylvania's reliance on this tenuous premise is misplaced. The United States' argument discusses the possible preemptive effects of existing statutes and regulations, not the possible preemptive effects of the consent decree. The statutes and regulations mentioned by the United States will continue to exist regardless of the disposition of this action. The district court had no occasion to, and did not, rule on whether existing statutes and regulations preempt state laws.

Pennsylvania also argues that Texas Eastern has already raised preemption as a defense to an action brought by the State of Kentucky. This argument is also unpersuasive. In its answer to Kentucky's complaint, Texas Eastern maintained that Kentucky's claims were barred "by virtue of the doctrine of pre-emption." The record in today's case shows that Texas Eastern filed its answer to Kentucky's complaint on July 27, 1988—more than one year before the district court entered the consent decree in today's case. It is apparent that Texas Eastern's argument in the Kentucky litigation referred to preemption allegedly created by existing statutes or regulations rather than by the consent decree.

3) Litigation of the preemption issue.

■ Pennsylvania argues that the entry of the consent decree might force Pennsylvania to respond to a preemption argument made by Texas Eastern in a future action that Pennsylvania might bring against Texas Eastern. Pennsylvania claims that the possibility that it may have to litigate this theoretical preemption issue satisfies Rule 24(a)(2)'s impairment requirement. This argument is without merit. The possibility that Pennsylvania might have to respond to a questionable argument in a subsequent action initiated by Pennsylvania is not a sufficiently practical impairment of Pennsylvania's interest in protecting its environment and its citizens to warrant intervention under Rule 24(a)(2) to allow it to inject the argument in this case.

The authorities cited by Pennsylvania for the proposition that the burden of additional litigation justifies intervention are inapposite. In *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir.1970), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970), the United States moved to intervene in order to assert a tax lien against funds claimed by a Swiss corporation which had already intervened in order to assert its claim to the funds. We held that the United States demonstrated impairment by showing that it would have been difficult to obtain personal jurisdiction over the Swiss corporation in a subsequent suit. *See id.* at 1124. We concluded that practical impairment was satisfied when the alternative to intervention in an existing action in United States courts was that the government would be forced to assert a tax lien in Swiss courts. *See id.* at 1125. The claimed burden of possibly having to argue the alleged preemptive effect of the consent decree in later litigation Pennsylvania might initiate does not compare with the burden on the United States in *Diaz*.

■ In *Gaines v. Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir.1970) (per curiam), a law firm and its client entered into a contingent fee arrangement which provided that neither the law firm nor the client could dispose of the claim without the written consent of the other party. After the law firm filed the suit and worked on the claim, the client discharged the firm and substituted another firm as counsel. The discharged firm moved to intervene in order to protect its interest in the client's recovery. We held that the discharged firm had demonstrated the requisite impairment. *See id.* at 54. Aside from its unique factual setting, the distinguishing feature in

*Gaines* is the fact that the discharged firm would have had to initiate a subsequent action to collect the fees allegedly generated in the existing litigation. In today's case by comparison, Pennsylvania cannot enforce its environmental laws against Texas Eastern without initiating its own action. The claimed burden of possibly having to argue the wholly independent preemptive effect of the consent decree in that future litigation does not implicate the concerns present in *Gaines*.

### C. *Permissive intervention.*

The district court denied Pennsylvania's motion for permissive intervention under Fed.R.Civ.P. 24(b)(2) which states: "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Our review of a district court's ruling on a motion for permissive intervention is limited. It is settled law in this circuit that permissive intervention is " 'wholly discretionary with the [district] court.' " *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 471 (5th Cir.1984) (en banc) (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 1913 at 551 (1972)), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). We will only review the district court's denial of permissive intervention for a clear abuse of discretion. *See id.*

In today's case, the EPA and Texas Eastern have fully negotiated a complex settlement which provides for civil penalties and a large-scale cleanup by Texas Eastern pursuant to laws and regulations of the United States. Pennsylvania can enforce its own laws by bringing a separate action against Texas Eastern. The district court held that the consent decree adequately protected state interests and that permissive intervention would result in undue delay. We find no clear abuse of discretion.

### III. CONCLUSION

The district court's denial of the motion to intervene of right is AFFIRMED, and the appeal from the district court's denial of the motion for permissive intervention is DISMISSED.