HARVEY FERTILIZER AND GAS CO., Plaintiff v. PITT COUNTY and THE PITT COUNTY BOARD OF COMMISSIONERS, Defendants v. ROGER McINTYRE, JUDITH HUNT, JOSEPH KELLY, BARBARA KELLY, WAYNE CLIFT, HAZEL CLIFT, JAMES A. MANNING, CLEMON A. THOMAS, BRENDA THOMAS, GEORGE M. WORSLEY, PATRICIA A. WORSLEY, FLOYD SNEED, EMMA SNEED, FRANCES WHITFIELD, A. J. THOMAS, ANNIE THOMAS, MARY HINES and MARY BUNNS, Intervenor-Defendants

No. COA01-1330

(Filed 17 September 2002)

**1. Parties— intervention—standard of review**

The de novo standard for review of N.C.G.S. § 1A-1, Rule 24(a)(2) decisions on intervention as a matter of right is expressly adopted. Although our appellate courts have not specifically stated the standard of review, they have weighed the facts of each case in light of whether the intervening party has shown a direct and immediate interest; whether denial of intervention would result in a practical impairment of the protection of that interest; and whether representation of that interest is not adequate.

**2. Parties— intervention—inadequate protection of interest—burden of showing**

An order allowing intervention in a zoning case under N.C.G.S. § 1A-1, Rule 24(a)(2) was reversed because the intervenors did not show that their interests would not be adequately represented. Contrary to the intervenors' contention, the party seeking intervention must show inadequate representation of its interest.

Appeal by intervenor-defendants from order entered 3 August 2001 by Judge William C. Griffin, Jr. in Superior Court, Pitt County. Heard in the Court of Appeals 14 August 2002.

*Ward and Smith, P.A., by Lance P. Martin and A. Charles Ellis, for plaintiff-appellee.*

*Charles L. McLawhorn, Jr.; and Land Loss Prevention Project, by Marcus Jimison and Katherine Carpenter, for intervenor-defendants.*

HARVEY FERTILIZER & GAS CO. v. PITT CTY.

[153 N.C. App. 81 (2002)]

McGEE, Judge.

Harvey Fertilizer and Gas Co. (plaintiff) filed a complaint on 16 May 2001 seeking a declaratory judgment that plaintiff had a vested right to complete its cotton gin project and a permanent injunction enjoining Pitt County and the Pitt County Board of Commissioners (Board of Commissioners) from enforcing a zoning ordinance and moratorium affecting the completion of the project. Plaintiff also requested a temporary restraining order and preliminary injunction. The trial court granted plaintiff's request for a temporary restraining order on 17 May 2001. Intervenor-defendants filed a motion to intervene in this action on 23 May 2001. The trial court held a hearing on both plaintiff's motion for preliminary injunction and intervenor-defendants' motion to intervene. In an order filed 29 May 2001 the trial court granted plaintiff's motion for preliminary injunction. Two days later the trial court granted intervenor-defendants' motion to intervene.

A hearing was held on 20 July 2001 on plaintiff's motion for summary judgment and an order was entered on 3 August 2001 granting plaintiff's summary judgment motion. The order declared that plaintiff had a vested right to complete its cotton gin project in Pitt County, and therefore Pitt County, its agents, and affiliated governmental units were permanently enjoined from enforcing the amended moratorium and zoning ordinance in a way that would prevent the completion or operation of the cotton gin project. Intervenor-defendants appeal from that order. In a cross-assignment of error, plaintiff appeals from the order granting the intervenor-defendants' motion to intervene.

Plaintiff, an Eastern North Carolina agribusiness corporation, began searching in January 2001 for a location to build a cotton gin in Pitt County. Plaintiff looked at a site off of Manning Road (Manning site), west of Bethel, North Carolina. The Board of Commissioners enacted a zoning ordinance on 22 January 2001 that would in effect make a cotton gin a non-conforming use at the Manning site upon the effective date of the ordinance, 1 July 2001. The Board of Commissioners enacted a moratorium on 5 February 2001 which prohibited the establishment of certain conditional and special uses from that date until 1 July 2001, the effective date of the January 22 zoning ordinance. However, this moratorium did not specifically list cotton gins as a prohibited use.

Despite enactment of the zoning ordinance, plaintiff entered into a contract on 10 February 2001 for the purchase of the Manning site

HARVEY FERTILIZER & GAS CO. v. PITT CTY.

[153 N.C. App. 81 (2002)]

from Frances Carson (Carson) for the amount of $250,167.24, with a closing and payment date in April 2001. Plaintiff alleges in its complaint that two days later, the North Carolina Agricultural Finance Authority entered into an "inducement agreement" with plaintiff for the issuance of $4,500,000.00 in agriculture revenue bonds to finance the cotton gin project.

The first in a series of assurances by Pitt County officials that the cotton gin project would not be hindered by the January 22 zoning ordinance or the February 5 moratorium occurred on 15 February 2001, when a planning technician with the Pitt County Planning Office advised Carson's surveyor that the February 5 moratorium and the January 22 zoning ordinance would not affect the cotton gin project if plaintiff obtained the necessary building permits by 1 July 2001. Carson shared this information with plaintiff. Plaintiff entered into a contract for construction of a cotton gin with Consolidated Gin Co. on 16 February 2001. The contract price was $2,220,000.00 and plaintiff made a $550,000.00 down payment on the gin. Plaintiff entered into a contract with Crustbuster/Speed King on 22 February 2001 for the construction of a module feeder for the cotton gin project. The contract price was $163,350.00 and plaintiff made a down payment of $40,837.50 on 1 March 2001. Plaintiff alleges in its complaint that the estimated delivery dates for both the cotton gin and the module feeder were in June 2001.

The second instance of assurances by Pitt County officials occurred on 5 March 2001, when plaintiff's president spoke with the Pitt County Director of Planning. The Director of Planning assured plaintiff that the February 5 moratorium and the January 22 zoning ordinance would have no effect on the cotton gin project as long as plaintiff obtained a building permit for the site by 1 July 2001. In response to a request from the Director of Planning, plaintiff sent a letter to the Pitt County Planning Office that same day giving general information about the cotton gin project and a preliminary site plan. Plaintiff purchased three tractors for use at the gin for a price of $51,516.21 on 9 March 2001. Later that month, plaintiff agreed to pay approximately $180,000.00 for the conversion of three other tractors for use at the cotton gin. Plaintiff also made its first application for permits that month, when on 12 March 2001 it completed septic permit applications and paid the $300.00 application fee. Plaintiff received preliminary approval of its septic permit application on 21 March 2001 pending submission of a final site map.

The third instance of assurances by Pitt County officials occurred in late March when plaintiff attended a meeting of the Board of Commissioners to make a presentation on the cotton gin project. At that meeting, the county attorney gave further assurances that plaintiff could proceed with the cotton gin project as long as it obtained the necessary permits by 1 July 2001. Plaintiff alleges that the chairman of the Board of Commissioners made similar statements at this meeting. Opposition to the cotton gin project was voiced at this meeting.

Plaintiff applied for air quality permits from the North Carolina Department of Environment and Natural Resources (DENR) on 4 April 2001 and paid the $50.00 application fee. However, before DENR could issue a permit, a compliance letter was required from the Pitt County Planning Office stating that the cotton gin project was consistent with local regulations. Plaintiff requested on 6 April 2001 that the Pitt County Planning Office send a compliance letter to DENR. Even though plaintiff requested this letter on 6 April 2001, the letter was not sent until 26 April 2001, almost three weeks after the request. A few days after contacting the Pitt County Planning Office, plaintiff delivered its site plan to the North Carolina Environmental Health Division (EHD) for final approval of septic permits.

The Board of Commissioners held a public hearing on 16 April 2001 on whether to specifically add cotton gins to the February 5 moratorium. At this meeting there was also a unanimous vote to notify Governor Mike Easley and the North Carolina Agricultural Finance Authority that the Pitt County Board of Commissioners opposed the construction and development of a cotton gin at the Manning site. These two letters were sent 17 April 2001 and a similar letter was sent to plaintiff on 19 April 2001.

Plaintiff completed its sedimentation and erosion control plan application and submitted it on 22 April 2001 to the Pitt County Planning Office, along with the $9,728.00 application fee. A few days later on 26 April 2001, the Pitt County Planning Office sent the compliance letter required by DENR. DENR issued the required air quality permits.

After a public hearing on 7 May 2001, the Board of Commissioners amended the February 5 moratorium to include cotton gins. On the same day, septic permits for an office building and a cotton gin were issued to plaintiff. Two days after the moratorium was amended, plaintiff filed for a building permit for the cotton gin project. The Pitt

County Planning Office refused to accept the application because of the recently amended moratorium.

Plaintiff filed this action. The trial court granted a temporary restraining order to plaintiff on 17 May 2001. Plaintiff's sedimentation and erosion control plan was approved on 23 May 2001 and plaintiff again applied for a building permit for the cotton gin project. On the same day, intervenor-defendants moved to intervene in the present action. Plaintiff's building permit was issued on 25 May 2001. After obtaining all the above referenced permits, plaintiff completed construction of the cotton gin project and began operation in early October 2001.

[1] Plaintiff argues in its cross-assignment of error that intervenor-defendants were improperly allowed to intervene in the present action. Defendant Pitt County has not appealed the trial court's order. Therefore, if this Court determines that the intervenor-defendants were improperly allowed to intervene, we do not reach intervenor-defendants' assignments of error. Accordingly we first consider plaintiff's cross-assignment of error.

The trial court granted intervenor-defendants' motion to intervene on 31 May 2001. The trial court, in allowing the intervention as a matter of right, noted in its order that the intervenor-defendants "are so situated that the disposition of this action may as a practical matter impair or impede their ability to protect their property interests, as well as their health, safety and welfare."

N.C. Gen. Stat. § 1A-1, Rule 24(a) provides that a third party may intervene as a matter of right:

(1) When a statute confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

N.C.G.S. § 1A-1, Rule 24(a) (2001). To satisfy the requirements of Rule 24(a)(2), our Supreme Court has recently stated that an intervening party "must show that (1) it has a direct and immediate interest relating to the property or transaction, (2) denying intervention would result in a practical impairment of the protection of that interest, and

(3) there is inadequate representation of that interest by existing parties." *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 683 (1999) (citing *Alford v. Davis*, 131 N.C. App. 214, 217-19, 505 S.E.2d 917, 920 (1998); *Ellis v. Ellis,* 38 N.C. App. 81, 83, 247 S.E.2d 274, 276 (1978)).

Before reviewing the trial court's order granting intervenor-defendants' motion to intervene, we must address the standard of review to be applied. Intervenor-defendants argue in their reply brief to this Court that the standard of review to be applied to interventions as a matter of right has not been specifically addressed by this Court. While not announcing a standard explicitly, the decisions of our appellate courts appear to have employed a *de novo* standard implicitly when reviewing decisions of a trial court concerning interventions as a matter of right. *See Virmani*, 350 N.C. at 459, 515 S.E.2d at 682-83; *Councill v. Town of Boone Bd. of Adjust.*, 146 N.C. App. 103, 107-08, 551 S.E.2d 907, 910 (2001); *Proctor v. City of Raleigh Bd. of Adjust.*, 133 N.C. App. 181, 184, 514 S.E.2d 745, 747 (1999); *see also Hill v. Hill,* 121 N.C. App. 510, 511-12, 466 S.E.2d 322, 323-24 (1996) ("Intervention of right is an absolute right and denial of that right is reversible error, regardless of the trial court's findings.") (citing *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968) (decision under precursor to N.C.R. Civ. P. 24(a)(2), N.C. Gen. Stat. § 1-73)). In all of these cases, our appellate courts, although not specifically stating the standard of review, weighed the facts of each case in light of the three factors cited above, reaching a conclusion as to whether the facts were sufficient to satisfy the requirements of N.C.G.S. § 1A-1, Rule 24(a)(2).

In contrast, our appellate courts have noted several times that the appropriate standard for reviewing a trial court's decision concerning permissive intervention under N.C.G.S. § 1A-1, Rule 24(b) is whether the trial court abused its discretion. *See Virmani*, 350 N.C. at 460, 515 S.E.2d at 683; *Alford v. Davis*, 131 N.C. App. 214, 219, 505 S.E.2d 917, 921 (1998); *State ex rel. Long v. Interstate Casualty Ins. Co.*, 106 N.C. App. 470, 474, 417 S.E.2d 296, 299 (1992). The Supreme Court's decision in *Virmani* highlights the different treatment our appellate courts have accorded the two types of intervention. *Vermani*, 350 N.C. at 458-62, 515 S.E.2d at 682-84. In *Virmani*, the Supreme Court first reviewed the trial court's intervention as a matter of right decision, looking at the facts and applying the law to the facts as if conducting a *de novo* review. *Id.* at 458-59, 515 S.E.2d at 682-83. The Supreme Court next reviewed the trial court's decision under

N.C.G.S. § 1A-1, Rule 24(b). *Id.* at 460-62, 515 S.E.2d at 683-84. The Supreme Court noted that an abuse of discretion standard was the correct standard to employ, and accordingly engaged in a deferential review of the trial court's permissive intervention rulings. *Id.* Despite these prior appellate decisions, intervenor-defendants argue that we should adopt the view that intervention as a matter of right determinations should be subject to an abuse of discretion standard of review as well.

As this specific issue has not been decided by our State's appellate courts, we consider decisions from other jurisdictions. In that Rule 24 of the North Carolina Rules of Civil Procedure is virtually identical to Rule 24 of the Federal Rules of Civil Procedure, we appropriately look to federal court decisions for guidance. *See Turner v. Duke University*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) (stating that since the North Carolina Rules of Civil Procedure are practically identical to the federal rules, federal courts' interpretations of the federal rules "are thus pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules") (citation omitted); *Ellis v. Ellis*, 38 N.C. App. 81, 84-85, 247 S.E.2d 274, 277 (1978) (taking a similar approach in determining the appropriate standard for review of N.C.G.S. § 1A-1, Rule 24(b) motions). However, it should be noted that we are not bound by the interpretation of any particular federal court as to the interpretation of our own rules of procedure, even though our rules are similar to the federal rules. *State ex rel. Martin v. Preston*, 325 N.C. 438, 449-50, 385 S.E.2d 473, 479 (1989) (citations omitted).

The opinions of the federal circuit courts are divided on whether the appropriate standard for reviewing decisions of the trial court on Rule 24(a)(2) motions is an abuse of discretion review or a *de novo* review. The Fifth, Sixth, Eighth, Ninth, and Tenth Circuits, as well as the Colorado, New Mexico, and Utah courts engage in *de novo* review of trial court decisions under Rule 24(a).[1] *See Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 89-90 (10th Cir. 1993); *Sierra Club v. Robertson*, 960 F.2d 83, 85 (8th Cir. 1992); *United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991) (citation omitted); *Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990) (citations omitted); *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *Feigin v. Alexa Group, Ltd.*,

---

1. The decisions from these state courts, though no more binding on this Court than federal court decisions in this case, can be used to further enlighten us as to the rationales cited by other courts in this area of the law.

19 P.3d 23, 27-28 (Colo. 2001); *In re Marriage of Gonzalez*, 1 P.3d 1074, 1077 (Utah 2000); *Chino Mines Co. v. Del Curto*, 842 P.2d 738, 740 (N.M. Ct. App. 1992) (stating that "where the facts underlying the application are not in dispute, we review the propriety of the court's ruling as an issue of law") (citations omitted). In contrast, the First, Second, Third, and Fourth Circuits review Rule 24(a)(2) decisions by a trial court under an abuse of discretion standard. *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991); *International Paper Co. v. Town of Jay, Maine*, 887 F.2d 338, 343-44 (1st Cir. 1989); *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987) (citations omitted); *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 990-91 (2d Cir. 1984).

The reasons courts have stated they favor a *de novo* standard, as opposed to an abuse of discretion standard, are that "review of the district court's decision involves application of a rule of law to the established facts, and because the issue primarily involves consideration of legal concepts in the mix of fact and law." *United States v. Stringfellow*, 783 F.2d 821, 825-26 (9th Cir. 1986) (citation omitted), *vacated and remanded on other grounds sub nom.*, 480 U.S. 370, 94 L. Ed. 2d 389 (1987).

The reason courts have stated for employing an abuse of discretion standard of review in intervention of right cases is that "although Rule 24(a)(2) seems to provide for three simple and distinct requirements, application of the Rule involves the pragmatic balancing of a range of factors that arise in varying factual situations." *International Paper Co.*, 887 F.2d at 343-44 (citation omitted). The First Circuit quoted from Judge Friendly's opinion in *United States v. Hooker Chemicals & Plastics Corp.* as support for the abuse of discretion standard:

> The various components of the Rule are not bright lines, but ranges—not all 'interests' are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate. . . . Application of the Rule requires that its components be read not discretely, but together. . . . Finally, although the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action.

*International Paper Co.*, 887 F.2d at 344 (quoting *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984)). The First Circuit noted that it believed that the abuse of discretion

standard is the better approach, "in light of the great variety of factual circumstances in which intervention motions must be decided, the necessity of having the 'feel of the case' in deciding these motions, and other considerations essential under a flexible reading of Rule 24(a)(2)." *Id.* (internal quotes omitted) (quoting *Hooker Chemicals & Plastics Corp.*, 749 F.2d at 991).

However, several of the federal courts that have adopted the abuse of discretion standard have noted that the particular abuse of discretion standard applied to review of Rule 24(a) motions is "more stringent" than that applied to review of Rule 24(b) motions. *International Paper Co.*, 887 F.2d at 344 (citing *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987)). The rationale for this subtle distinction is that, since Rule 24(a)(2) provides that if a party meets its requirements, the party "*shall* be permitted to intervene," a trial court's discretion in deciding whether to allow intervention of right is limited to determinations concerning the factors in Rule 24(a)(2). *Id.* (quoting *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382, 94 L. Ed. 2d 389, 402 (1987) (Brennan, J., concurring in part and concurring in the judgment)). Thus, in federal circuits that apply an abuse of discretion standard, most look to determine if the trial court "applied an improper legal standard or reached a decision that [they] are confident is incorrect." *Brody by and through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992) (citations and internal quotes omitted). Except for the Fourth Circuit, all of the circuits adopting the abuse of discretion standard have adopted this standard "inhabit[ing] an area somewhere between de novo review and abuse of discretion." *In re Marriage of Gonzalez*, 1 P.3d at 1077 n.2 (citations omitted).

Despite this alternative view in several courts, we believe the *de novo* standard to be the better approach. In that our appellate courts have not heretofore adopted a specific standard of review for N.C.G.S. § 1A-1, Rule 24(a)(2) decisions, we expressly adopt the *de novo* standard. Furthermore, this explicit adoption of the *de novo* standard comports with the past decisions of our State's appellate courts in reviewing N.C.G.S. § 1A-1, Rule 24(a)(2) decisions. *See Virmani*, 350 N.C. at 459, 515 S.E.2d at 682-83; *Councill*, 146 N.C. App. at 107-08, 551 S.E.2d at 910; *Proctor*, 133 N.C. App. at 184, 514 S.E.2d at 747.

[2] Plaintiff argues that intervenor-defendants failed to demonstrate that their interests were not adequately represented. Plaintiff argues that because intervenor-defendants never set forth a claim as to why

representation by Pitt County and the Pitt County Board of Commissioners was inadequate, intervenor-defendants failed to satisfy the third element required under *Virmani*, thus not meeting their burden to be permitted to intervene as a matter of right. Intervenor-defendants counter that the party opposing a third party's attempt to intervene has the burden of showing that the third party's interests are adequately represented.

Our Supreme Court in *Virmani* stated that "[t]he prospective intervenor seeking intervention as a matter of right under Rule 24(a)(2) must show that . . . there is inadequate representation of that interest by existing parties." *Virmani*, 350 N.C. at 459, 515 S.E.2d at 683 (citing *Alford v. Davis*, 131 N.C. App. 214, 217-19, 505 S.E.2d 917, 920 (1998); *Ellis v. Ellis*, 38 N.C. App. 81, 83, 247 S.E.2d 274, 276 (1978)). This Court's decisions, both before and after *Virmani*, have been consistent with this requirement. *See United Services Automobile Assn. v. Simpson*, 126 N.C. App. 393, 399, 485 S.E.2d 337, 341 (1997) (stating that intervenors "have demonstrated that the present litigants fail to adequately represent their interests"); *Hill*, 121 N.C. App. at 512, 466 S.E.2d at 324 ("To intervene of right [proposed intervenor] must also establish its interests are not adequately represented by existing parties.") (citation omitted); *see also Councill*, 146 N.C. App. at 108, 551 S.E.2d at 910 (finding intervenors not adequately represented where "appellants alleged that the Board intended to settle the dispute with [plaintiff] without appellants' input, and that the Board intended to issue a permit to [plaintiff].").

In their reply brief, intervenor-defendants argue that "[i]t is helpful to see how courts both here and in other jurisdictions have decided the issue," but cite no appellate court decision from our State to counter plaintiff's assertion. Intervenor-defendants cite only to two federal court opinions and to the *Wright and Miller Treatise*. As indicated above, the North Carolina courts can look to federal court decisions on the rules of procedure to inform their decisions. *Turner*, 325 N.C. at 164, 381 S.E.2d at 713. However, our Supreme Court has already addressed this issue in *Virmani*, *see* 350 N.C. at 459, 515 S.E.2d at 683, thus use of opinions from other jurisdictions would be erroneous. *See Hutelmyer v. Cox*, 133 N.C. App. 364, 376, 514 S.E.2d 554, 562 (1999) (noting that "it is not our prerogative to overrule or ignore clearly written decisions of our Supreme Court") (citation omitted).

Therefore, we hold that intervenor-defendants failed to meet their burden of showing that their interests were not adequately repre-

sented. Intervenor-defendants never asserted in their motion that their interests were inadequately represented. In fact, intervenor-defendants' main argument on this point is that they do not have to make such a showing; they erroneously contend it is the plaintiff's burden to show that representation is adequate. The record is devoid of anything that would support a claim that intervenor-defendants met their burden before the trial court of showing that their interests were not adequately represented.

Since defendant-intervenors did not satisfy the element of N.C.G.S. § 1A-1, Rule 24(a)(2) requiring them to show their interests would not be adequately represented, we need not address the other two requirements of the Rule.

We reverse the trial court's order allowing intervenor-defendants to intervene in this action as a matter of right and we dismiss intervenor-defendants' appeal.

Appeal dismissed.

Judges McCULLOUGH and BRYANT concur.