2005 OK CIV APP 112

**In the Matter of the ADOPTION OF D.D.B., a minor child,**

**Beverly Bishop, Plaintiff/Appellant,**

v.

**Eddie R. Lovelis and Terri L. Lovelis, Defendants/Appellees.**

**No. 100,955.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 29, 2005.

David L. Morris, Morris Law Office, Ada, OK, for Plaintiff/Appellant.

Lori L. Loman, Ada, OK, for Defendants/Appellees.

James H. Kemp, Ada, OK, for Minor Child.

Opinion by KEITH RAPP, Vice Chief Judge.

¶ 1 Beverly Bishop, (Bishop), the maternal grandmother of D.D.B., a minor child, appeals the trial court's order denying her Motion to Intervene in the adoption proceedings of her grandchild, D.D.B.

## BACKGROUND [1]

¶ 2 The foster parents, Eddie R. Lovelis and Terri L. Lovelis, (Lovelis) of D.D.B. filed this adoption action in May 2002. The court had previously adjudicated D.D.B. to be deprived and terminated the parental rights of the natural parents. D.D.B., who was born on February 5, 2000, has lived with Lovelis since May 2000, when she was three months old. Bishop previously filed a Petition to adopt D.D.B. and her brother, H.D.B., in January, 2002, which the trial court denied. The court stayed all adoption proceedings, including the present one, pending resolution

of Bishop's appeal of the trial court's denial of her petition to adopt D.D.B. The trial court, however, refused to stay related juvenile proceedings.

¶ 3 The Court of Civil Appeals, Division 2, affirmed the trial court's denial of Bishop's Petition for Adoption on January 13, 2004, and mandate was issued on February 12, 2004. Bishop also filed a separate action in this case on May 14, 2002, requesting grandparental visitation. This issue is still pending and is not part of this appeal.

¶ 4 Bishop filed a Motion to Intervene in the Lovelis' adoption proceedings on May 17, 2002, for the purpose of protecting her court-allowed visitation rights with her grandchild. She alleged she had standing, as the maternal grandmother of D.D.B., to intervene in the adoption proceeding and had a "liberty interest, [which] is constitutionally protected under the due process clause of the United States Constitution." [2] After hearing arguments on Bishop's Motion to Intervene at the Pre-trial Conference, the trial court denied her motion. The court held:

6. The Court having examined the Motion to Intervene by the maternal grandmother and counsel having submitted the same without further hearing or argument the Court finds that the maternal grandmothers [sic] petition for adoption of the named child having been denied and the natural mothers [sic] rights having been relinquished there remains no standing for the grandmother to appear or intervene in this adoption proceeding. The fact that the grandmother has pending a petition for grandparental visitation does not create a basis for her to object to the adoption petition filed herein.

Bishop appeals the trial court's denial of her Motion to Intervene.

## PROCEDURAL BACKGROUND

¶ 5 Bishop filed her Petition in Error in this case on July 15, 2004, and Lovelis responded on July 30, 2004.

---

1. As the proceedings involving the minor child are extensive, this Court sets forth only those facts relevant to this appeal.

2. *See* n. 3.

¶ 6 On January 5, 2005, this Court entered an Order in this case, ordering James H. Kemp, the court-appointed attorney for the minor child, D.D.B., to file a brief on behalf of the child. Mr. Kemp complied.

¶ 7 This Court entered another Order, dated April 27, 2005, concerning the apparent unilateral termination by DHS of Bishop's visitation provided in the juvenile deprived action involving D.D.B., Case No. J–2000–22, Pontotoc County. This Court, citing *Scott v. Scott*, 2001 OK 9, 19 P.3d 273, in its Order noted that Title 10 O.S. Supp.2004, § 5, requires an evidentiary hearing before termination of grandparental visitation rights. Accordingly, this Court stated in its order:

> This Court directs the parties to make the Order terminating Grandmother's visitation rights to D.D.B. appear of record and to show that Grandmother received the statutorily-mandated hearing for termination of her visitation rights or to show cause why consideration of this appeal should not proceed on the record actually before this Court.

In response, Lovelis filed a supplemental brief to this Court's Order of April 27, 2005, but did not provide the requested information concerning whether Bishop received the statutorily-mandated hearing for terminating her grandparental visitation nor did they show cause why this appeal should not proceed on the existing record.

¶ 8 Lovelis instead argued (1) Bishop is not a person acting *in loco parentis* and, therefore, does not have a justiciable interest in the adoption proceeding; (2) the trial court did not abuse its discretion by denying Bishop's Motion to Intervene, under 12 O.S. Supp.2004, § 2024, asserting Bishop lacked standing to object to the adoption because her petition for adoption had been denied and her daughter, the natural mother of D.D.B., had relinquished her rights; and (3) that since visitation was minimal, it naturally ended when "the deprived child action was closed with the granting of [Lovelis'] petition to adopt D.D.B." They assert further that to apply *Scott* to these facts would be an "unwarranted expansion" of the law. However, they failed to provide any authority for this argument.

¶ 9 Bishop and the attorney for the minor child did not respond to this Court's Order.

## STANDARD OF REVIEW

■ ¶ 10 Review of denial of a motion to intervene as a matter of right presents a question of law. *See Morton v. Baker*, 1938 OK 409, ¶ 4, 82 P.2d 998, 1000 ("In [cases involving a motion to intervene as a matter of right] the petitioner has an absolute right to intervene in the proceeding, and permission for him to do so is not discretionary with the court, and its order refusing permission is reviewable by appeal.") While Oklahoma courts have explicitly enunciated the abuse of discretion standard for reviewing a permissive intervention motion, the courts have not been as clear concerning review of a motion to intervene as a matter of right. *See Tulsa Rock Co. v. Williams*, 1982 OK 10, ¶ 5, 640 P.2d 530, 532.

■ ¶ 11 The Oklahoma statute regarding intervention, 12 O.S. Supp.2004, § 2024, is basically identical to the federal counterpart, Rule 24 of the Federal Rules of Civil Procedure. Thus, this Court may look to the decisions of the federal court for guidance. *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 5, 689 P.2d 299, 301.

¶ 12 The federal circuit courts are divided on whether to apply a *de novo* review or an abuse of discretion review to trial court decisions on intervention as a matter of right. *See Feigin v. Alexa Group, Ltd.*, 19 P.3d 23 (Colo.2001); *Harvey Fertilizer & Gas Co. v. Pitt County*, 153 N.C.App. 81, 568 S.E.2d 923 (2002). However, the Tenth Circuit uses the *de novo* standard of review when reviewing decisions regarding mandatory intervention. In *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 89–90 (10th Cir.1993) (*citations omitted*), the Court stated:

> It is settled that rulings on permissive intervention under Rule 24(b) are reviewed for abuse of discretion.... There is a split in the Circuits, however, regarding the proper standard by which to review the substantive requirements of Rule 24(a)(2). Although we have not found a case in which this circuit has explicitly articulated the proper scope of review, our prior deci-

sions indicate that we review rulings on intervention of right de novo. Accordingly, in light of the language in our prior decisions, we will review rulings on motions to intervene as of right pursuant to Rule 24(a)(2) under a de novo standard. *See also Feigin v. Alexa Group, Ltd.,* 19 P.3d 23, 28 (Colo.2001)("We hold that a de novo standard should apply when reviewing a trial court's denial of a motion to intervene under the substantive requirements of Rule 24(a) because such requirements concern questions of law.")

■ ¶ 13 Based on the Federal Court decisions and the reasoning therein, this Court holds that the appropriate standard to apply in review of the trial court's decision denying a motion to intervene as a matter of right is a *de novo* review. Under this standard, the appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1.

## ANALYSIS

¶ 14 Lovelis failed to fully respond to this Court's Order of April 27, 2005; accordingly, this appeal proceeds on the record presented.

■ ¶ 15 The issue presented is whether the trial court erred in denying Bishop's Motion to Intervene in the adoption of D.D.B. by Lovelis. Bishop argues that, as the maternal grandmother, she "has a pro-

tected liberty interest, and a constitutional right to intervene in the adoption proceedings" and that it is a·violation of the Due Process Clause of the Fourteenth Amendment to deny her right to intervene.[3] She also argues the trial court erred in denying her Motion to Intervene so that she could protect her court-ordered visitation.

■ ¶ 16 The statutory right to intervention is found in Title 12 O.S. Supp.2004, § 2024, which provides in pertinent part:

A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:

1. When a statute confers an unconditional right to intervene; or

2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

In other words, intervention in an action is mandatory when a person has an interest relating to the property or transaction which is the subject of the litigation and "the disposition of the action may impair or impede his ability to protect that interest." *Nicholas v. Morgan,* 2002 OK 88, ¶ 20, 58 P.3d 775, 782.

¶ 17 In her brief-in-chief, Bishop states the district court, in the deprivation action involving D.D.B., Case No. J–2000–22, Pontotoc County, granted her regular visitation

---

**3.** In her brief, Bishop relies on *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), in support of this proposition. Bishop argues that *Smith* held that "even foster parents, completely unrelated to the minor child, have a limited liberty interest which is protected by the Due Process Clause of the Fourteenth Amendment, therefore ordering that the foster parents had a right to intervene in an adoption proceeding." However, *Smith* does not stand for the proposition propounded by Bishop and does not involve the right to intervene. In *Smith,* the United States Supreme Court held that the procedures in place for removal of a child from foster parents were sufficient to protect whatever liberty interest the foster parents might have. *Id.* at 855–56, 97 S.Ct. at 2115. Concerning the foster parents' argued liberty interest, the Court specifically stated:

As this discussion suggests, [the foster parents'] claim to a constitutionally protected lib-

erty interest raises complex and novel questions. It is unnecessary for us to resolve those questions definitively in this case, however, for like the District Court, we conclude that "narrower grounds exist to support" our reversal. We are persuaded that, even on the assumption that [the foster parents] have a protected "liberty interest," the District Court erred in holding that the preremoval procedures presently employed by the State are constitutionally defective.

*Id.* at 847, 97 S.Ct. at 2111.

Although this Court finds *Smith* does not stand for the proposition argued by Bishop, *Smith* is instructive. As in *Smith,* it is not necessary for this Court to resolve whether Bishop has a liberty interest protected by the Fourteenth Amendment for the reason this Court finds statutory authority that is dispositive of this appeal.

with the minor child and that she exercised all visitation allowed. She further states that "[s]ince denial of the Motion to Intervene, DHS unilaterally terminated any further visitation by grandmother." Neither Lovelis nor the attorney for the minor child dispute that Bishop received visitation with D.D.B. in the juvenile proceeding. Lovelis, in fact, admitted in their supplemental brief that the Court granted Bishop weekly limited, supervised visitation with D.D.B. in the deprivation action.

¶ 18 Title 10 O.S. Supp.2004, § 5, provides in pertinent part:

C. 3. Except as otherwise provided by this section, the district court shall not grant to any grandparent of an unmarried minor child, visitation rights to that child:

a. subsequent to the final order of adoption of the child; provided however, any subsequent adoption proceedings shall not terminate any prior court-granted grandparental visitation rights unless the termination of visitation rights is ordered by the court after opportunity to be heard and the district court determines it to be in the best interest of the child....

¶ 19 The Oklahoma Supreme Court in *Scott v. Scott,* 2001 OK 9, ¶ 6, 19 P.3d 273, 275, held that Section 5 "requires an evidentiary hearing before the termination of grandparent visitation ... at which time the court is to take testimony on whether termination of the visitation is in the best interest of the child."

¶ 20 It is undisputed that the trial court in the deprived child case awarded Bishop grandparental visitation with the minor child. It is also undisputed that this visitation was unilaterally terminated by DHS and Lovelis.

¶ 21 This Court ordered the parties, in its April 27, 2005, Order, to show why Bishop was not entitled to the statutory protection provided pursuant to Title 10 O.S. Supp.2004, § 5. None of the parties provided an Order establishing that Bishop received the statutorily-mandated hearing for termination of her visitation rights or an Order terminating those rights. Thus, the appellate record wholly fails to establish that Bishop was provided the requisite hearing terminating her visitation or otherwise indicate that her visitation rights have been judicially terminated.

¶ 22 Moreover, Bishop's opportunity to protect her existing visitation rights will not be available unless she is allowed to intervene in the present action. Title 10 O.S. Supp.2004, § 5, provides that a district court shall not grant grandparental visitation subsequent to the final order of adoption of the child. Thus, Bishop's ability to protect her visitation will be extinguished if she is not allowed to intervene in the present action.

¶ 23 This Court finds Bishop has an interest in the present action under Title 12 O.S. Supp.2004, § 2024, and has the right to intervene for the limited purpose of protecting her court-ordered right to visitation. Bishop shall be allowed to intervene as a matter of right because denial of intervention will impede her ability to protect this interest.

¶ 24 This Court determines that Bishop shall be allowed to intervene for the limited purpose of establishing that she has court-ordered visitation with D.D.B. and also for the purpose of protecting her right to that visitation.

¶ 25 This matter is reversed and remanded to the trial court for further proceedings consistent with this Opinion.

¶ 26 REVERSED AND REMANDED WITH INSTRUCTIONS.

GOODMAN, P.J., and WISEMAN, J. (sitting by designation), concur.